IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| AMES HOLDING CORP., *et al.*,[1] ) | |
| ) | Case No. 09-14406 (CSS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | Re: Docket No. 42 |

## *CORRECTED* ORDER (A) APPROVING BID PROCEDURES AND BID PROTECTIONS RELATING TO SALE OF SUBSTANTIALLY ALL DEBTORS' ASSETS; (B) SCHEDULING AN AUCTION AND HEARING; (C) APPROVING FORM AND MANNER OF NOTICE OF SALE AND AUCTION; AND (D) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT AND REJECTION OF CONTRACTS

Upon the motion (the "Motion")[2] of the Debtors, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order (the "Bid Procedures Order") (a) approving the Bid Procedures and the Bid Protections with respect to the proposed sale (the "Sale") of substantially all of the Debtors' assets (the "Purchased Assets"), as more specifically described in the form of Asset Purchase Agreement ("APA") attached to the Motion, which the Debtors and Axia Acquisition Corporation (the "Purchaser") intend to enter into in substantially such form; (b) scheduling an Auction to sell the Purchased Assets; (c) scheduling a Sale Hearing to consider approval of the sale of the Purchased Assets and setting

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Ames Holding Corp. (6130), Axia Incorporated (5251), TapeTech Tool Co., Inc. (7106), and Ames Taping Tool Systems, Inc. (6440). The Debtors' corporate offices are located at 3350 Breckinridge Boulevard, Suite 100, Duluth, Georgia 30096.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

objection and bidding deadlines with respect to the Sale; (d) approving the form and manner of the Sale Notice; and (e) establishing certain procedures and deadlines relating to the assumption and assignment of the executory contracts and unexpired leases pursuant to the Purchase Agreement and establishing procedures for the rejection of executory contracts and unexpired leases not assumed and assigned in connection with the Sale, all as more fully set forth in the Motion and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; after due deliberation and sufficient cause appearing therefor,

## THE COURT HEREBY FINDS AND CONCLUDES THAT:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. This Court has jurisdiction over the Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C. Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Hearing.

2

D. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to all interested parties and entities through service of the Motion on: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims; (c) counsel to Agent; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the United States Department of Justice; (g) counsel to the Debtors' controlling shareholder; (h) the relevant taxing authorities; and (i) parties requesting notice pursuant to Bankruptcy Rule 2002(i). In light of the nature of the relief requested, the Debtors respectfully submit that no other or further notice is necessary.

E. The Bid Procedures, substantially in the form annexed hereto as Exhibit 1, (i) are fair, reasonable and appropriate, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and (iii) are designed to maximize the value of the Purchased Assets.

F. The Debtors' Sale Notice attached hereto as Exhibit 2 is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Sale Hearing and the Bid Procedures to be employed in connection therewith, and complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

G. The Assumption and Assignment Notice attached hereto as Exhibit 3 are reasonably calculated to provide all counterparties to the executory contracts and unexpired leases with proper notice of the assumption and assignment of the applicable executory contract or unexpired lease and any cure amounts relating thereto.

H. The entry of this Bid Procedures Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

3

I. The Debtors have demonstrated that the payment of the Break-Up Fee and the Expense Reimbursement (as each term is defined below) (collectively, the "<u>Bid Protections</u>") to the Purchaser is supported by a compelling and sound business justification and is in the best interests of the Debtors and their estates pursuant to section 363 of the Bankruptcy Code. The Bid Protections are (i) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) a substantial benefit to the Debtors' estates; (iii) reasonable and appropriate, including in consideration of the efforts that have been and will be expended by the Purchaser; and (iv) necessary to ensure that the Purchaser will continue its proposed acquisition of the Purchased Assets. The Bid Protections are material inducements for, and conditions of, the Purchaser's entry into the APA and are the product of arm's-length, good-faith negotiations between the Debtors and the Purchaser. The Purchaser is unwilling to commit to hold open its offer to purchase the Purchased Assets under the terms of the APA unless it is assured payment of the Bid Protections. Thus, assurance to the Purchaser of the Bid Protections will promote competitive bidding through the auction process. Further, the Purchaser has provided a benefit to the Debtors' estates by increasing the likelihood that the price for which the Purchased Assets are sold will reflect their true worth.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted to the extent set forth below.

2. Except as otherwise expressly provided in this Bid Procedures Order, all objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3. The findings of fact set forth above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this matter pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

## I. Bid Procedures and Auction

4. Bid Procedures. The Bid Procedures (including the Bid Protections), in substantially the form attached hereto as Exhibit 1, are incorporated herein and approved, and shall apply with respect to the Sale.

5. Bid Deadline. The Bid Deadline upon which date and time all Qualified Bids must be submitted as set forth in the Bid Procedures is February 8, 2010, at 5:00 p.m. (prevailing Eastern Time).

6. No Other Qualified Bids. If the Debtors do not receive any Qualified Bids other than the APA, they will not hold the Auction and the Purchaser will be named the Successful Bidder.

7. Auction. If a Qualified Bid is received other than the APA, the Debtors are authorized to conduct an Auction for the Purchased Assets in accordance with the Bid Procedures. The Auction shall take place on February 11, 2010, at 10:00 a.m. (prevailing Eastern Time) at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801, or such other place and time as the Debtors shall notify all Qualified Bidders, counsel to the Creditors' Committee and other invitees. Only representatives of the Debtors, the Purchaser and Qualified Bidders are entitled to participate in the Auction.

8. <u>Compliance with Local Rule</u>. Pursuant to Local Rule 6004-1(c)(ii)(B)-(D), the following provisions shall apply to the Auction: (a) each Qualified Bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale; (b) the Auction shall be conducted openly and all creditors will be permitted to attend; and (c) bidding at the Auction will be transcribed or videotaped.

9. <u>Qualified Bids</u>. The APA is a Qualified Bid, and the Purchaser is a Qualified Bidder for all purposes. A Qualified Bidder that desires to make a bid shall comply with the requirements set forth in the Bid Procedures for making such bid. The Debtors shall have the right to reject any and all bids that do not conform to the Bid Procedures, subject to the provisions of the Bid Procedures.

## II. The Bid Protections

10. In consideration of the Purchaser's entry into the APA and the time and expense that the Purchaser has spent and incurred in connection with the negotiation of the APA, as well as for the risk associated with acting as the stalking horse, and in recognition of the benefits which it provides the Debtors in seeking to sell the Purchased Assets for the highest and best offer at the Auction, the Debtors agree to provide the Purchasers with the following Bid Protections: (a) if the Purchaser terminates the APA pursuant to Sections 8.1(e), Section 8.1(g) or Section 8.1(i) thereof, then as the Purchaser's sole and exclusive remedy upon such termination and as liquidated damages and not a penalty, the Debtors shall within two (2) business days after such termination (i) pay the Purchaser a break-up fee equal to $500,000 (the "<u>Break-Up Fee</u>") in cash and (ii) subject to Court approval as to reasonableness, reimburse the Purchaser for all documented out-of-pocket costs and expenses incurred by the Purchaser in connection with its legal, accounting and business due diligence, negotiating and documenting

6

the APA and the transactions contemplated thereby, and documenting the capitalization of the Purchaser, including (x) fees and expenses of attorneys, accountants, financial advisors, and other consultants and (y) fees and expenses of the agent and proposed lenders under the New Senior Credit Facility (as defined in the APA) (the "Expense Reimbursement") not to exceed $750,000; provided that if the APA is terminated pursuant to Section 8.1(e) due to the exercise by the board of directors of any of the Debtors of their fiduciary duties in accepting any other offer or taking any action in contravention of the APA, as contemplated by Section 3(d) of the Restructuring Agreement (as defined in the APA), then (x) the Expense Reimbursement shall be due and payable within two (2) business days after such termination and (y) the Break-Up Fee shall only become due and payable upon the consummation a transaction other than the Sale of the Purchased Assets to the Purchaser.

11. To the extent the Purchaser seeks payment of the Expense Reimbursement, in connection with such a request, the Purchaser shall provide an invoice supporting the amount of the Expense Reimbursement to the counsel for the Debtors and the counsel for the Creditors' Committee; provided, however, that invoices may be redacted by the Purchaser to protect confidential and/or privileged information.

12. The applicable Break-Up Fee and/or Expense Reimbursement shall be administrative expenses of the Debtors with priority over any and all administrative expenses of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code but subordinate in all respects to (a) any valid and perfected prepetition lien of the Existing Senior Term Lenders (as defined in the APA) or the Existing Subordinated Term Lenders (as defined in the APA) and (b) any adequate protection lien, replacement lien or super-priority administrative expense claim of the Existing Senior Term Lenders or the Existing Subordinated Term Lenders arising under the

Interim Cash Collateral Order or Final Cash Collateral Order; provided, however, that notwithstanding anything to the contrary contained herein, the Debtors shall only be liable to pay such Expense Reimbursement and Break-Up Fee (i) from the proceeds of the closing of a transaction other than the Sale of the Purchased Assets to the Purchaser, (ii) from property of the Debtors' estates on which the Existing Senior Term Lenders do not have a valid, perfected and unavoidable first-priority lien, or (iii) as a condition to confirmation of a plan that does not provide for the Sale of the Purchased Assets to the Purchaser in accordance with the terms and conditions set forth in the APA, so long as, with respect to this subsection (iii), such Expense Reimbursement and Break-Up Fee is not paid out of the collateral or proceeds of the collateral of the Existing Senior Term Lenders or the Existing Subordinated Term Lenders. Notwithstanding anything to the contrary herein or in the Interim Cash Collateral Order or the Final Cash Collateral Order, in the event of the closing of a sale of substantially all of the assets of the Debtors to a Successful Bidder (other than the Purchaser), the Expense Reimbursement and Break-Up Fee shall be payable from the proceeds of such sale and shall have priority over the prepetition liens of the Existing Senior Tem Lenders and the Existing Subordinated Term Lenders only with respect to such proceeds.

13. The applicable Break-Up Fee and/or Expense Reimbursement shall survive termination of the APA. The applicable Break-Up Fee and/or Expense Reimbursement payable under the circumstances provided in Section 9.1 of the APA constitutes liquidated damages and not a penalty, and is the exclusive remedy of the Purchaser for any termination of the APA pursuant to Section 9.1 of the APA.

14. Subject to Paragraph 12 of this Order, the Debtors are authorized and directed to take all necessary actions pursuant to the terms of the APA, the Bid Procedures and the Bid

Procedures Order to pay the Break-Up Fee and the Expense Reimbursement to the Purchaser should they become due and payable as set forth above and in the APA, and are authorized and directed to pay such Break-Up Fee and Expense Reimbursement without further Order of the Court.

15. Solely for the purposes of determining a Successful Bid, any overbid submitted by the Purchaser shall be credited for the full amount of the Break-Up Fee and the Expense Reimbursement potentially payable by the Debtors.

16. The Debtors shall not be permitted to grant or otherwise consent to any bid protections in favor of any other prospective bidder.

### III. The Sale Hearing and Notice Thereof

17. Sale Hearing. The Sale Hearing shall be held before this Court on February 17, 2010, at 11:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel and interested parties may be heard.

18. Service of Bid Procedures Order. The Debtors shall serve a copy of this Bid Procedures Order by first class mail on all of the parties served with notice of the Motion on or before two (2) business days after the entry of this Bid Procedures Order.

19. Service of Sale Notice. The Debtors shall serve copies of the Sale Notice, substantially in the form attached hereto as Exhibit 2 (which Sale Notice is hereby approved), within two (2) days after entry of this Bid Procedures Order on: (i) the U.S. Trustee; (ii) counsel to the Prepetition Agent; (iii) counsel to the Creditors' Committee; (iv) the 20 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; (v) all taxing authorities having jurisdiction over any of the Purchased Assets; (vi) counsel to the Purchaser; (vii) all parties who are known to possess or assert a secured claim

against the Purchased Assets; (viii) all contract and lease counterparties; (ix) all parties known or reasonably believed to have expressed an interest in the Purchased Assets; (x) the Securities and Exchange Commission; (xi) all parties to any pension plan maintained, sponsored or contributed to by any of the Debtors; (xii) all other creditors of the Debtors (whether liquidated, contingent or unmatured) other than the creditors specifically excluded from such service, as agreed by the Debtors and Purchaser; (xiii) all parties to any governmental approvals or permits; (xiv) any applicable state environmental agency; and (xv) all parties who have filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002.

20. <u>Publication of Notice</u>. The Debtors shall publish a notice in substantially the form of the Sale Notice once in the <u>Wall Street Journal</u> within three (3) days after entry of this Order or as soon as reasonably practicable thereafter.

21. <u>Sale Objections and Sale Objection Deadline</u>. Objections, if any, to the Sale and related relief requested in the Motion must: (a) be in writing; (b) state with specificity the nature of such objection; (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court on or before February 12, 2010, at 4:00 p.m. (prevailing Eastern Time) (the "<u>Sale Objection Deadline</u>"), or such later date and time as the Debtors may agree; and (e) be served, so as to be actually received on or before the Sale Objection Deadline, by (i) counsel for the Debtors, Parker Hudson Rainer & Dobbs, 1500 Marquis Two Tower 285, Peachtree Center Ave, N.E., Atlanta, Georgia 30303, Attn: C. Edward Dobbs and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801, Attn: Mark D. Collins; (ii) counsel to the Purchaser, Goldberg Kohn Bell Black Rosenbloom & Moritz, Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603-5792, Attn: Randall L. Klein, Esq. and Danielle Wildern Juhle, Esq. and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street,

P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert Dehney, Esq.; (iii) counsel to the administrative agent for the Debtors' prepetition lenders, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn: Melissa S. Alwang, Esq.; (iv) counsel to Van Kampen Asset Management, Kaye Scholer, LLC, 70 W. Madison St., Suite 4100, Chicago, IL 60602, Attn: D. Tyler Nurnberg, Esq.; (v) counsel for the Creditors' Committee, Benesch, Friedlander, Coplan & Aronoff, LLP, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attn: Bradford J. Sandler, Esq.; (vi) the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801; and (vii) the U.S. Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2208 - Lockbox #35, Wilmington, Delaware 19801, Attn: David M. Klauder, Esq.

22. <u>No Further Notice of Adjourned Sale Hearing</u>. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

### IV. Notice Procedures for Executory Contracts and Unexpired Leases

23. <u>Service of Assumption and Assignment Notice</u>. As soon as practicable following entry of this Bid Procedures Order, the Debtors shall serve each counterparty with an Assumption and Assignment Notice substantially in the form attached hereto as <u>Exhibit 3</u>, by first class mail on all non-debtor counterparties to executory contracts and unexpired leases. The Assumption and Assignment Notice will inform each recipient that the respective executory contract or unexpired lease may be either: (a) assumed and assigned; (b) rejected; or (c) subject to a 30-day period beginning on the Closing Date (the "Contract Option Period") during which 30-day period, in accordance with Section 5.1(a) of the APA, the Purchaser may designate, by

11

written notice to the Debtors, (i) which of these executory contracts or unexpired leases (the "Potentially Assigned Contracts") are to be treated as Rejected Contracts (such notice, the "Rejection Notice") and (ii) which of the Potentially Assigned Contracts are to be treated as Assigned Contracts (such notice, the "Assumption Notice"). The Assumption and Assignment Notice will include cure amounts (the "Cure Amounts") that will apply in the event that the applicable executory contract or unexpired lease is assumed and assigned. In the event that an executory contract or unexpired lease will be assumed after the Sale Hearing, the counterparty will receive a notice of assumption and assignment of such contract or lease (the "Post-Closing Assumption Notice") which will provide the counterparty an opportunity to object to the proposed adequate assurance of future performance. In the event that the counterparty does not object to the Post-Closing Assumption Notice within 10 days following service of same, such Potentially Assigned Contract will be deemed an Assigned Contract. In the event that the counterparty objects to the Post-Closing Assumption Notice, the Debtors will request a hearing, the sole issue at which will be the proposed adequate assurance of future performance.

24. At all times (x) with respect to any Potentially Assigned Contract for which a Rejection Notice is timely delivered, from the Closing until the date on which the Purchaser delivers a Rejection Notice with respect to such Potentially Assigned Contract or (y) with respect to all other Potentially Assigned Contracts, from and after the Closing, the Purchaser shall (i) be entitled to receive any payments that the Debtors receive on account of the Potentially Assigned Contracts during such period and (ii) pay and be solely responsible for all liabilities and obligations accruing during such period arising under Potentially Assigned Contracts to the extent such liabilities and obligations first arise on or after the Closing Date, would otherwise constitute chapter 11 administrative expenses, and do not arise as a result of any default by the

12

Debtors under such Potentially Assigned Contracts and Purchaser shall be entitled to the benefits accruing under such Potentially Assigned Contracts during such period; provided that such performance by the Purchaser shall not be deemed to be an explicit or implicit assumption by the Purchaser of any executory contract.

25. No later than one day prior to the Sale Hearing, the Debtors or the Purchaser will file and serve on the applicable executory contract and unexpired lease counterparties: (a) a list of executory contracts and unexpired leases that have, as of that date, been determined to be Assigned Contracts; and (b) a list of executory contracts and unexpired leases that have, as of that date, been determined to be Rejected Contracts and will not be subject to the Contract Option Period. Pursuant to Bankruptcy Code § 365 and without further notice, the Debtors will be authorized to assume and assign all Assigned Contracts listed in clause (a) above, and Rejected Contracts listed in clause (b) above will be deemed rejected, both as of the date of the Sale Hearing.

26. <u>Contract Objections and Cure Objection Deadline</u>. Objections, if any, to the assumption and assignment of the executory contracts and unexpired leases, the adequate assurance of future performance of such executory contracts and unexpired leases, and the Debtors' proposed Cure Amounts (a "Contract Objection"), must: (a) be in writing; (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court, on or before February 12, 2010 at 4:00 p.m. prevailing Eastern Time (the "Cure Objection Deadline"), or such later date and time as the Debtors may agree; and (e) be served, so as to be actually received on or before the Cure Objection Deadline, by (i) counsel for the Debtors, Parker Hudson Rainer & Dobbs,

13

1500 Marquis Two Tower 285, Peachtree Center Ave, N.E., Atlanta, Georgia 30303, Attn: C. Edward Dobbs and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801, Attn: Mark D. Collins; (ii) counsel to the Purchaser, Goldberg Kohn Bell Black Rosenbloom & Moritz, Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603-5792, Attn: Randall L. Klein, Esq. and Danielle Wildern Juhle, Esq. and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert Dehney, Esq.; (iii) counsel to the administrative agent for the Debtors' prepetition lenders, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn: Melissa S. Alwang, Esq.; (iv) counsel for the Creditors' Committee, Benesch, Friedlander, Coplan & Aronoff, LLP, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attn: Bradford J. Sandler, Esq.; (v) the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801; and (vi) the U.S. Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2208 - Lockbox #35, Wilmington, Delaware 19801, Attn: David M. Klauder, Esq.

27. <u>Proposed Cure Amount</u>. If a counterparty to an executory contract or unexpired lease does not timely and properly file a Contract Objection in the manner set forth above, the Debtors' proposed Cure Amount shall be fixed and shall be paid to the counterparty to the executory contract or unexpired lease to the extent such contract or lease is assumed and assigned and the counterparty shall be deemed to consent to the assumption and assignment of the executory contract or unexpired lease. If a counterparty timely and properly files a Contract Objection, then, as set forth in Assumption and Assignment Notice, such counterparty shall have the opportunity to appear before the Court at the Sale Hearing. In order for the Debtors to assume and assign any of the executory contracts or unexpired leases, the proposed Cure

14

Amount determined by the Court (if the counterparty objects) or set forth in the Assumption and Assignment Notice (if there is no objection) must be paid to the counterparty to the executory contract or unexpired lease.

28. <u>Failure to File a Contract Objection by the Cure Objection Deadline</u>. If a Contract Objection is not timely and properly filed and served in accordance with this Bid Procedures Order, (a) the Debtors' proposed Cure Amount shall be controlling with respect to the executory contract or unexpired lease notwithstanding anything to the contrary in any executory contract or unexpired lease or other document, (b) such contract or lease may be assigned to the Successful Bidder, (c) the failure to object shall be deemed consent to the assumption and assignment for the purposes of section 365(c) of the Bankruptcy Code or otherwise, (d) the counterparty to the executory contract or unexpired lease shall be forever barred from asserting any other claim arising prior to the assignment, if applicable, against the Debtors or the Successful Bidder as to such executory contract or unexpired lease and (e) with respect to the executory contract or unexpired lease, the Successful Bidder's promise to perform under the executory contract or unexpired lease shall be deemed adequate assurance of future performance under the executory contract or unexpired lease; <u>provided, however</u>, any counterparty that receives a Post-Closing Assumption Notice will have the opportunity to object to the proposed adequate assurance of future performance.

## VI. **Miscellaneous**

29. Subject to the terms of the APA, the Debtors reserve the right to amend any deadline set forth herein without further Court approval; <u>provided, however</u>, that no such amendment will provide any interested party with less notice than provided for as such deadlines are currently set forth herein; <u>provided, further</u>, that the Debtors shall file a notice detailing any

15

RLF1 3527540v.2

such changes with this Court and serve such notice in accordance with the Local Rules, including service upon any interested bidders.

30. Notwithstanding the possible applicability of Rules 6004(h), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of effectiveness or execution of this Order.

31. The Debtors are authorized to take all actions necessary to implement this Order.

32. All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33. This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Date: 1/15, 2010
Wilmington, Delaware

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE