# Exhibit "A"

# INDUSTRIAL BUILDING LEASE AGREEMENT

AMES TAPING TOOLS SYSTEMS, INC.
1923 NORTH ELSTON AVENUE
CHICAGO, ILLINOIS

# 1923 NORTH ELSTON BUILDING LEASE AGREEMENT SCHEDULE

| | | |
|---|---|---|
| A. | THE BUILDING: | 1923 North Elston Avenue, Chicago, Illinois |
| B. | AGENT FOR OWNER: | North Development, Ltd. |
| C. | PLACE OF PAYMENT OF RENT AND ADDRESS FOR NOTICE: | North Development, Ltd. |
| | | 110 North York Road |
| | | Elmhurst, Illinois 60126 |
| D. | TENANT AND CURRENT ADDRESS: | Ames Taping Tools Systems, Inc. |
| | | 3305 Breckinridge Blvd., Suite 122 |
| | | Duluth, Georgia 30096 |
| E. | GUARANTOR(S) AND ADDRESS: | None |
| F. | PREMISES: | See Attached Exhibit A |
| G. | DATE OF LEASE EXECUTION: | March 'X, 2004 |
| H. | LEASE YEAR: | Twelve (12) consecutive month periods commencing on the Commencement Date of Base Rent and each anniversary thereof; provided however, the first Lease Year shall also include the period of time between the Commencement Date and the Commencement Date of Base Rent. |
| I. | COMMENCEMENT DATE: | May 1, 2004 |
| J. | COMMENCEMENT DATE OF BASE RENT: | July 1, 2004 |
| K. | TERMINATION DATE: | April 30, 2009 |
| L. | RENTABLE AREA OF THE BUILDING: | 12,000        square feet |
| M. | RENTABLE AREA OF THE PREMISES: | 5,035 square feet |
| N. | TENANT'S PROPORTIONATE SHARE: | 100% (for Taxes) and 42% for Operating Expenses |
| O. | SECURITY DEPOSIT: | 1 month's rent |
| P. | LANDLORD: | Cole Taylor Bank as Trustee under Trust |

Q.   PERMITTED USE:            Retail, Office and Warehouse

R.   LEASING BROKER(S):        Olderman Realty & Development;
                               CaminsTomasz Kritt

S.   WORK LETTER:              See Rider B attached hereto

T.   BASE RENT:

     Lease Year 1:             Twelve and 00/100 Dollars ($12.00) per square foot.

                               Five Thousand Thirty-five and 00/100 Dollars ($5,035.00) per month.

                               Sixty Thousand Four Hundred Twenty and 00/100 ($60,420.00) per year.

     Lease Year 2:             Twelve and 50/100 Dollars ($12.50) per square foot.

                               Five Thousand Two Hundred Forty-four and 79/100 Dollars ($5,244.79) per month.

                               Sixty-two Thousand Nine Hundred Thirty-seven and 50/100 Dollars ($62,937.50) per year.

     Lease Year 3:             Thirteen and 00/100 Dollars ($13.00) per square foot.

                               Five Thousand Four Hundred Fifty-four and 58/100 Dollars ($5,454.58) per month.

                               Sixty-five Thousand Four Hundred Fifty-five and 00/100 Dollars ($65,455.00) per year.

     Lease Year 4:             Thirteen and 50/100 Dollars ($13.50) per square foot.

                               Five Thousand Six Hundred Sixty-four and 38/100 Dollars ($5,664.38) per month.

                               Sixty-seven Thousand Nine Hundred Seventy-two and 50/100 Dollars ($67,972.50) per year.

     Lease Year 5:             Fourteen and 00/100 Dollars ($14.00) per square foot.

Five Thousand Eight Hundred Seventy-four and 17/100 Dollars ($5,874.17) per month.

Seventy Thousand Four Hundred Ninety and 00/100 ($70,490.00) per year.

The foregoing Schedule is an integral part of this Lease and is hereinafter referred to as the "Lease Schedule" and the terms set forth above whenever used in this Lease, shall have the same meanings as set forth in the Lease.

**LANDLORD:**

**NORTH DEVELOPMENT, LTD.** as agent for the beneficiaries of Landlord

By: _____

Printed Name:    Calvin D. Boender

Its:   Manager _____
                (Title)

**TENANT:**

**AMES TAPING TOOLS SYSTEMS, INC.**

By: _____

Printed Name:  Charles E. Whipple

Its:   President _____
                (Title)

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| 1. | Rent | 1 |
| 2. | Additional Rent | 1 |
| A. | Definitions | 1 |
| (i) | Calendar Year | 1 |
| (ii) | Taxes | 2 |
| (iii) | Intentionally Omitted | 2 |
| B. | Expense Adjustment | 3 |
| 3. | Late Charges | 4 |
| 4. | Service | 4 |
| 5. | Landlord's Title | 4 |
| 6. | Certain Rights Reserved to Landlord | 4 |
| 7. | Default Under Other Lease | 5 |
| 8. | Risk Allocation | 5 |
| 9. | Waiver of Claims | 6 |
| 10. | Holding Over | 6 |
| 11. | Assignment and Subletting | 7 |
| 12. | Condition of Premises | 7 |
| 13. | Common Area | 9 |
| 14. | Alterations | 10 |
| 15. | Use of Premises | 11 |
| 16. | Repairs | 13 |
| 17. | Untenantability | 13 |
| 18. | Eminent Domain | 14 |
| 19. | Hazardous Substances | 14 |
| A. | Compliance with Laws and Regulations | 14 |
| B. | PCB's Removal | 14 |
| C. | Asbestos Removal and Containment | 14 |
| D. | Indemnification; Remedial Work | 15 |
| E. | Survival | 16 |
| 20. | Landlord's Remedies | 16 |
| 21. | Landlord's Default | 18 |
| 22. | Insurance | 18 |
| A. | Waiver | 18 |
| B. | Tenant's Insurance | 18 |
| C. | Landlord's Insurance | 19 |
| D. | Form of Insurance | 20 |
| E. | Indemnity | 20 |
| 23. | Subordination of Lease | 20 |
| 24. | Sale of Premises by Landlord | 21 |
| 25. | Estoppel Certificate | 21 |
| 26. | Notices | 21 |
| 27. | Miscellaneous | 21 |
| 28. | Additional Construction | 23 |
| 29. | Trash Removal | 23 |
| 30. | Brokers | 23 |

| | | |
|---|---|---|
| 31. | Security Deposit | 23 |
| 32. | Limitation on Landlord's Liability | 23 |
| 33. | Force Majeure | 23 |
| 34. | Events of Bankruptcy and Receivership | 23 |
| 35. | Tenant's Option to Terminate | 26 |
| Rider A | Rules and Regulations | 1 |
| Rider B | Work Letter | 4 |
| Rider C | Renewal Option | 1 |
| Exhibit A | Floor Plan | 1 |

3/16/2004

## INDUSTRIAL BUILDING LEASE AGREEMENT

This Agreement to Lease (the "Lease") is made and entered into as of this _____ day of March, 2004, by and between Landlord, Tenant and Guarantor(s) (if any) set forth in the Lease Schedule on the terms set forth below whereby Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the Premises for the term beginning on the Commencement Date (as to each applicable portion of the Premises as set forth on the Lease Schedule) and ending on the Termination Date, as set forth on the Lease Schedule (the "Term" or "Lease Term"), unless sooner terminated as provided herein, to be used for the Permitted Use set forth in the Lease Schedule and none other. The Lease Schedule attached hereto is hereby incorporated herein by reference (and hereinbefore and hereinafter referred to as "Lease Schedule") and the terms set forth in the Lease Schedule, whenever used in this Lease, shall have the same meanings as set forth in the Lease Schedule.

1. **Rent**. Tenant shall pay to Landlord at the Place of Payment of Rent or at such other place as Landlord or the Agent for Owner may designate beginning on the Commencement Date of Base Rent, the Base Rent as shown on the Lease Schedule in equal monthly installments, each without any set-off or deduction whatsoever, in advance on the first day of each and every calendar month during the Term, commencing on the Commencement Date of Base Rent, and prorated for fractions of a month if the Term shall commence on any day other than the first day of any month or be terminated on any day other than the last day of any month; provided however, Tenant shall pay the first full monthly installment of Base Rent due after any period of abatement at the time of execution of this Lease. Unpaid Rent shall bear interest from five (5) days after the due date until paid at the lesser of (i) four percent (4%) per annum plus the then current prime rate of interest established by Bank One, NA or its successor, or (ii) the maximum rate permitted by law, from the date due until paid.

2. **Additional Rent**. In addition to paying the Base Rent specified in Section 1 hereof, Tenant shall pay as additional rent (the "Additional Rent") the amount determined under this Section 2. The Base Rent and the Additional Rent are sometimes herein collectively referred to as the "Rent" and the payment thereof is an independent covenant of this Lease. All amounts due under this section as Additional Rent shall be payable for the same periods and in the same manner, time and place as the Base Rent, however, without any abatement or deferral as may be provided for Base Rent. Without limitation on other obligations of Tenant which shall survive the expiration of the Term, the obligations of Tenant to pay the Additional Rent provided for in this Section 2 shall survive the expiration of the Term. For any partial Calendar Year (hereinafter defined), Tenant shall be obligated to pay only a pro rata share of the Additional Rent, based on the number of days of the Term falling within such Calendar Year.

   A. **Definitions**. In addition to the terms defined in the Lease Schedule and elsewhere in this Lease, the following terms shall have the meanings ascribed to them:

   (i) **"Base Year"** shall mean Calendar Year 2004.

   (ii) **"Calendar Year"** shall mean each calendar year (i.e., January 1 through December 31) in which any part of the Term falls, through and including the year in which the Term expires;

(iii)     **"Operating Expenses"** means (1) all costs and expenses of every kind or nature paid or incurred by Landlord, its beneficiaries or principals, or Agent for Owner in connection with the management, ownership, operation, maintenance and repair of the Building, including, without limiting the generality of the foregoing, all insurance costs (including, without limitation, fire and extended coverage, public liability, workmen's compensation, rent and business interruption insurance costs), utility charges, management fees, window cleaning, janitorial service, snow and ice removal, costs and expenses of planting, maintaining replanting and replacing flowers, grass and other landscaping, all costs of independent contractors and wages and salaries of employees engaged in the operation, maintenance and repair of the Building and parking areas (including, without limitation, fringe benefits), legal and accounting expenses, and (2) amortization, with interest at the rate of twelve percent (12%) per year, of that portion of the cost of any capital improvements and replacements made to the Building intended by Landlord to reduce Operating Expenses or required by any governmental authority. Operating Expenses shall not include:   real estate brokers' leasing commissions or compensation; Taxes; depreciation; interest and principal payments on mortgages, and other debt costs, if any; cost of work done in the Building to the extent any tenant has paid the cost thereof to Landlord; and, except to the extent provided in subparagraph (2) above, costs of improvements and replacements which are capitalized in accordance with generally accepted accounting principles and have a depreciable life (for Federal income tax purposes) of more than seven (7) years, as determined by Landlord's accountant. If the Building is not fully leased and occupied during all or any portion of any Calendar Year, or if certain tenants do not pay their proportionate share of certain Building Operating Expenses because same are paid directly by the tenant, Landlord will make an adjustment to the actual amount of Operating Expenses for such Calendar Year to reflect the amount of Operating Expenses which would have been paid or incurred by Landlord or Agent for Owner if the Building had been fully leased and occupied, or if certain tenants did not pay certain Building Operating Expenses directly. Such adjusted amount shall be deemed to be the amount of Operating Expenses for such Calendar Year.  Such adjustment will be determined in accordance with Landlord's customary accounting and management principles consistently applied.  If any expense so paid in one (1) year relates to more than one (1) Calendar Year, at option of Landlord, such expense may be proportionately allocated among such related Calendar Years.

(iv)     **"Taxes"** means all federal, state and local governmental taxes, assessments, fees and charges (including, without limitation, real estate taxes and transit or transit district taxes and assessments) of any kind or nature, whether general, special, ordinary or extraordinary, which Landlord or its beneficiaries or principals, or the Agent for Owner shall pay or become obligated to pay because of or in connection with the ownership, leasing, management, control or operation of the Building (which term shall include the parcel or parcels of land used in connection with the Building) as set forth in tax bills for PINs 14-32-119-001 and 14-32-119-002. The amount of real estate and personal property taxes included in Taxes for any Calendar Year shall be the amount paid during such Calendar Year without regard to when such taxes accrued. There shall be included in Taxes for any Calendar Year the amount of all fees, costs and expenses (including, without limitation, attorneys' fees) paid by Landlord and applicable to such year in seeking or obtaining any refund or reduction of Taxes. If a special assessment payable in installments is levied against the Building, or any part thereof, Taxes for any Calendar Year shall include only the installments of such assessment, and any interest, payable in

such Calendar Year. Taxes shall not include any local, federal or state franchise, capital stock, inheritance, income or estate taxes, except that if (a) if and to the extent applicable, the Illinois Personal Property Tax Replacement Income Tax shall be included in Taxes and (b) if a change occurs in the method of taxation resulting in the substitution or addition of any such taxes, assessments, fees or other charges for any Taxes or increases in Taxes, as hereinabove defined, such substituted or additional taxes, assessments, fees or other charges shall be included in Taxes, including, without limitation, any commercial lease tax or tax, assessment, fee or charge imposed upon Landlord, its beneficiaries or principals, or the Agent of Owner measured in whole or in part upon the rents or other income of the Building or with respect to the use of sewers, water or other utilities serving the Building or with respect to any business conducted in the Building. If the Building is not fully leased and occupied during all or any portion of any Calendar Year, or if certain tenants do not pay their proportionate share of certain Taxes because same are paid directly by the tenant, Landlord will make an adjustment to the actual amount of Taxes for such Calendar Year to reflect the amount of Taxes which would have been paid or incurred by Landlord or Agent for Owner if the Building had been fully leased and occupied, or if certain tenants did not pay certain Taxes directly. Such adjusted amount shall be deemed to be the amount of Taxes for such Calendar Year. Such adjustment will be determined in accordance with landlord's customary accounting and management principles consistently applied.

Tenant shall not be responsible to pay for any late charges or penalties incurred by landlord for delays in payment of taxes.

B.    **Expense Adjustment**. Tenant shall pay, as Additional Rent to Landlord on the first day of each and every calendar month during each Calendar Year, an amount equal to (i) one-twelfth (1/12th) of the Tenant's Proportionate Share of the amount of Operating Expenses for such Calendar Year in excess of the Operating Expenses for the Base Year; plus (ii) an amount equal to one-twelfth (1/12th) of the Tenant's Proportionate Share of the amount of Taxes for such Calendar Year in excess of the Taxes for the Base Year; provided however, if the Lease Year does not commence on January 1st, Additional Rent for the first and last Lease Years shall be prorated.

For purposes of calculating such Additional Rent for any Calendar Year, Landlord may make reasonable estimates or projections (collectively, the "Projections") of Taxes for such Calendar Year. As soon as practicable after the beginning of each Calendar Year, Landlord shall deliver to Tenant a written statement (the "Projection Statement") (a) setting forth the Projections of Taxes for that Calendar Year, and (b) setting forth the Additional Rent payable in such Calendar Year based on the Projections; provided however, that the failure by Landlord to provide a Projection Statement shall not relieve Tenant from its obligation to continue to pay Base Rent or Additional Rent at the rate then in effect under this Lease, and if and when Tenant receives a Projection Statement from Landlord, Tenant shall pay the full amount of any increases in Additional Rent reflected thereby, effective retroactively to the beginning of the Calendar Year and pay the Additional Rent required by the Projection Statement beginning on the first day of the following calendar month.

As soon as practicable after each Calendar Year, Landlord shall notify Tenant, in writing, of the actual amount of Taxes for such Calendar Year (the "Adjustment Statement"). If such actual amounts exceed the Projections for such Calendar Year, then Tenant shall, within thirty (30) days after the date of the Adjustment Statement, pay to Landlord an amount equal to the difference between the amount of the Additional Rent based on the Projection Statement and the amount of the Additional Rent based on the Adjustment Statement. The obligation to make such payment

3/16/2004

shall survive the expiration or earlier termination of the Term. If the amount paid by Tenant pursuant to the Projection Statement during such Calendar Year exceeds the amount thereon payable for such year based upon actual Taxes for such Calendar Year, then Landlord shall credit such excess to Additional Rent payable after the date of Landlord's notice until such excess has been exhausted, or if this Lease shall expire prior to full application of such excess, Landlord shall pay to Tenant the balance thereof not theretofore applied against Rent; provided however, at the end of the Term, at Landlord's option, Landlord may prorate Taxes based on one hundred ten percent (110%) of the most recently ascertainable bills for any Taxes not then evidenced by a bill and said proration shall be final. No interest or penalties shall accrue on any amounts which Landlord is obligated to credit or pay to Tenant by reason of this subparagraph.

3. **Late Charges**. Rent and Additional Rent are due on the first day of each month. Any Rent or Additional Rent received by Landlord after the fifth (5th) day of the month shall include a late fee equal to ten percent (10%) of the monthly rental amounts.

4. **Service**. Landlord shall bring electricity, water and gas service to the Premises. Distribution within the Premises shall be Tenant's responsibility. Tenant shall pay when due all charges for water, electricity, gas and other utilities consumed on or in connection with the Premises. In the event said services are not separately metered and charged to Tenant by the utility company providing same, Tenant shall reimburse Landlord, on demand, for its proportionate cost of same premised on the ratio of the square footages of the premises served by and using such utility service for the applicable billing period. Landlord does not warrant that any of the services above mentioned will be free from interruptions caused by war, insurrection, civil commotion, riots, acts of God, enemy or Government action, repairs, renewals, improvements, alterations, strikes, lockouts, picketing, whether legal or illegal, accidents, inability of Landlord to obtain fuel or supplies, or any other cause or causes beyond the reasonable control of Landlord. Any such interruption of service shall never be deemed an eviction or disturbance of Tenant's use and possession of the Premises or any part thereof, or render Landlord liable to Tenant for damages, or relieve Tenant from performance of Tenant's obligations under this Lease.

5. **Landlord's Title**. Landlord's title is and always shall be paramount to the title of Tenant, and nothing herein contained shall empower Tenant to do any act which can, shall or may encumber the title of Landlord. This Lease does not grant any rights to light or air over property, except over public streets kept open by public authority.

6. **Certain Rights Reserved to Landlord**. Landlord reserves the following rights: (a) to change the name or street address of the Building without notice or liability of Landlord to Tenant; (b) to install and maintain a sign or signs on the exterior of the Building; (c) during the last ninety (90) days of the Term or any part thereof, if during or prior to that time Tenant vacates the Premises, to decorate, remodel, repair, alter or otherwise prepare the Premises for reoccupancy; (d) to constantly have pass keys to the Premises; (e) with reasonable notice to Tenant, to exhibit the Premises to others; (f) to take any and all measures, including inspections, repairs, alterations, additions and improvements to the Premises or to the Building, as may be necessary or desirable for the safety, protection or preservation of the Premises or the Building or Landlord's interests, or as may be necessary or desirable in the operation of the Building; (g) to adjust Tenant's Proportionate Share and/or Base Rent (based on the stated Base Rent rate) as a result of and according to changes in the Rentable Area of the Premises in relation to the Rentable Area of the Building resulting from alterations or additions to the Building or resulting from measurements of the Rentable Area of the Premises or Rentable Area of the Building (the Premises and Building shall be measured from the exterior line of any exterior walls and the center line of any demising walls); (h) to install and maintain a cellular phone, satellite dish or similar receiving/transmission station on the roof of the Building.

3/16/2004

Provided that Landlord gives reasonable advance notice to Tenant (except in cases of emergency, when no notice shall be required), Landlord may enter upon the Premises and may exercise any or all of the foregoing rights hereby reserved or other rights and duties provided in this Lease without being deemed guilty of an eviction or disturbance of Tenant's use or possession and without being liable in any manner to Tenant.

7.  **Default Under Other Lease**. If the term of any lease, other than this Lease, made by Tenant for any premises in the Building shall be terminated or terminable after the making of this Lease because of any default by Tenant under such other lease, then Landlord shall have the option to declare Tenant in default under this Lease and Landlord shall be entitled to exercise all its rights as otherwise provided in this Lease upon Tenant's default.

8.  **Risk Allocation**.

    A.  The parties desire, to the extent permitted by law, to allocate certain risks of personal injury, bodily injury or property damage, and risks of loss of real or personal property by reason of fire, explosion or other casualty, and to provide for the responsibility for insuring those risks. It is the intent of the parties that, to the extent any event is insured for or required herein to be insured for, any loss, cost, damage or expense arising from such event, including, without limitation, the expense of defense against claims or suits, be covered by insurance, without regard to the fault of Tenant, its officers, employees or agents ("Tenant Protected Parties"), and without regard to the fault of Landlord, its beneficiaries, Agent for Owner, their respective partners, shareholders, members, agents, directors, officers and employees ("Landlord Protected Parties"). As between Landlord Protected Parties and Tenant Protected Parties, such risks are allocated as follows:

        (i)   Tenant shall bear the risk of bodily injury, personal injury or death, or damage to the property, of third persons, occasioned by events occurring on or about the Premises, regardless of the party at fault. Said risks shall be insured as provided in Section 22B.

        (ii)  Landlord shall bear the risk of bodily injury, personal injury or death, or damage to the property, of third persons, occasioned by events occurring on or about the Building (other than premises leased to tenants), provided such event is occasioned by the wrongful act or omission of any of Landlord Protected Parties. Said risks shall be insured against as provided in Section 22C.

        (iii) Tenant shall bear the risk of damage to Tenant's contents, personal property, trade fixtures, machinery, equipment, furniture and furnishings in or about the Premises, Common Areas or Building arising out of loss by the events required to be insured against pursuant to Section 22B.

        (iv)  Landlord shall bear the risk of damage to the Building arising out of loss by events required to be insured against pursuant to Section 22C.

    Notwithstanding the foregoing, provided the party required to carry insurance under Section 22B or Section 22C hereof does not default in its obligation to do so, if and to the extent that any loss occasioned by any event of the type described in this Section 8A(i) or (ii) exceeds the coverage or the amount of insurance required to be carried under said sections or such greater coverage or amount of insurance as is

5

actually carried, or results from an event not required to be insured against or not actually insured against, the party at fault shall pay the amount not actually covered.

9. **Waiver of Claims**. To the extent permitted by Law, and except as provided in Section 8 above, Tenant releases Landlord, Agent for Owner and their agents and employees from and waives all claims for damage to person or property sustained by Tenant or any occupant of the Building or Premises or by any other person, resulting from the Building or Premises or any part of either or any equipment or appurtenance becoming out of repair, or resulting from any accident in or about the Building or resulting directly or indirectly from any act or neglect of any tenant or occupant of the Building or of any other person. This Section 9 shall apply especially, but not exclusively, to the flooding of basements or other sub-surface areas, and to damage caused by refrigerators, sprinkling devices, air conditioning apparatus, water, snow, frost, steam, excessive heat or cold, falling plaster, broken glass, sewage, gas, odors or noise, or the bursting or leaking of pipes or plumbing fixtures, and shall apply equally whether any such damage results from the act or neglect of other tenants, occupants or servants in the Building or of any person, and whether such damage be caused or result from any thing or circumstance above mentioned or referred to or any other thing or circumstance whether of a like nature or of a wholly different nature. If any such damage whether to the Premises or to the Building or any part thereof, personal property located in the Premises or the Building, or whether to Landlord or to other tenants in the Building, results from any negligent or willful misconduct of Tenant, Landlord may, at Landlord's option, repair such damage and Tenant shall, upon demand by Landlord, reimburse Landlord forthwith for the total cost of such repairs. Tenant shall not be liable for any damages caused by its act or negligence to the extent that Landlord or a tenant has recovered the full amount of the damages from insurance and the insurance company has waived in writing its right of subrogation against Tenant. All property belonging to Tenant or any occupant of the Premises that is in the Building or the Premises shall be there at the risk of Tenant or such other person only, and Landlord shall not be liable for damage thereto or theft or misappropriation thereof. Tenant shall defend, indemnify and save harmless the Landlord and any other persons, firms or corporations having any interest in the Premises, their agents and employees, against any liability or claim thereof whether for injury to persons, including death, or damages to property (i) occurring on or arising out of the use of the Premises or the Building during the Term hereof except if caused by any act or omission to act by Landlord, said other persons, firms and corporations, their agents, employees, licensees or contractors; (ii) arising out of any default by Tenant hereunder; or (iii) arising out of any act or omission to act by Tenant, its agents or employees, on the Common Areas (as hereinafter defined), if any, at any time; or (iv) arising out of the provisions of the Illinois Liquor Control Act, as amended.

10. **Holding Over**. If Tenant retains possession of the Premises or any part thereof after the termination of the Term by lapse of time or otherwise, Tenant shall pay Landlord rent at 125% of the Rent (including Additional Rent) due for the month immediately prior thereto as specified in Sections 1 and 2 for the months (or any part of a month in which event Rent for the entire month shall be paid) Tenant thus remains in possession, and in addition thereto, shall pay Landlord all damages sustained by reason of Tenant's retention of possession. In addition, Tenant shall reimburse Landlord for all costs, expenses, damages and liabilities sustained as a result of Tenant's holding over. If Tenant remains in possession of the Premises, or any part thereof, after the termination of the Term by lapse of time or otherwise, such holding over shall, at the election of Landlord expressed in a written notice to Tenant and not otherwise constitute (b) a month-to-month tenancy; or (c) a tenancy at Landlord's will; or, all at the Rent stated hereinabove. If no such notice is given, said tenancy shall be deemed a tenancy at Landlord's will. The provisions of this section do not waive Landlord's rights of reentry or any other right hereunder.

11. **Assignment and Subletting**. Unless Tenant shall have first procured Landlord's written consent, which consent shall not be unreasonably withheld, Tenant shall not (a) assign or convey this Lease or any

interest under it; (b) allow any transfer hereof or any lien upon Tenant's interest by operation of law; (c) sublet the Premises or any part thereof; or (d) permit the use or occupancy of the Premises or any part thereof by anyone other than Tenant. The consent by Landlord to any transfer, assignment or subletting shall not constitute a waiver of the necessity of Landlord's consent to any subsequent attempted transfer, assignment or subletting and in connection with such assignment, subletting or transfer, Tenant shall remain liable under the terms and conditions of this Lease. Tenant shall pay to Landlord, as Additional Rent, immediately upon receipt thereof, a sum equal to any rent or other consideration paid to Tenant by any subtenant or assignee in excess of the sum of Base Rent plus Additional Rent then payable to Landlord pursuant to the provisions of this Lease, plus any other profit or gain realized by Tenant from such subleasing or assignment. Tenant shall pay Landlord's reasonable costs and expenses, including reasonable attorneys' fees, incurred in connection with the processing of any request for Landlord's consent to an assignment or subletting. If Tenant is a partnership or limited liability company, a withdrawal or change, whether voluntary, involuntary or by operation of law, of partners or members owning a controlling interest in Tenant shall be deemed a voluntary assignment of this Lease and subject to the provisions of this paragraph. If Tenant is a corporation, any dissolution, merger, consolidation or other reorganization of Tenant, or the sale or transfer of or issuance of stock constituting a controlling interest of the capital stock of Tenant shall be deemed a voluntary assignment of this Lease and subject to the provisions of this paragraph. However, the preceding sentence shall not apply to corporations, the stock of which is traded through a national or regional exchange or over-the-counter. If Tenant shall desire to assign its interest in this Lease or to sublet all or any part of the Premises and such action would not constitute a mortgage, lien or other encumbrance on this Lease, the Premises or Tenant's interest therein, then Tenant shall, by notice in writing, advise Landlord of its intention from, on and after a stated date (which shall not be less than ninety (90) days after the date of Tenant's notice) to effect such assignment or sublet, and, in such event, Landlord shall have the right, to be exercised by giving written notice to Tenant within thirty (30) days after receipt of Tenant's written notice, to recapture the space described in Tenant's notice and such recapture notice shall, if given, cancel and terminate the term of this Lease with respect to the space therein described as of the date stated in Tenant's notice. If Tenant's notice shall cover all of the space hereby demised, and Landlord shall elect to give the aforesaid recapture notice with respect thereto, the term of this Lease shall expire and end on the date stated in Tenant's notice as fully and completely as if that date had been herein definitely fixed for the expiration of the Term. If, however, the term of this Lease is cancelled pursuant to the foregoing with respect to less than the entire Premises, the Rent then in effect shall be adjusted on the basis of the number of square feet retained by Tenant in proportion to the original Rentable Area of the Premises, and this Lease so amended shall continue thereafter in full force and effect. If Landlord, upon receiving Tenant's notice with respect to any such space, shall not exercise its right to cancel and terminate as aforesaid, Landlord will not unreasonably withhold its consent to Tenant's assignment or subletting covered by its notice.

12.  **Condition of Premises**. Tenant's taking possession shall be conclusive evidence as against Tenant that the Premises were in good order and satisfactory condition when Tenant took possession.

No promise of Landlord to alter, remodel or improve the Premises or the Building and no representation respecting the condition of the Premises or the Building have been made by Landlord to Tenant, unless the same is contained herein, or made a part hereof.

In the event that Landlord alters, remodels or improves the Premises to conform with Tenant's requirements, Landlord specifically disclaims all warranties, including but not limited to any implied warranty, that the Premises are suitable for a particular purpose, and remedies are restricted to a pass through of any express warranties provided by Landlord's contractors and equipment suppliers.
Tenant shall, at its expense, comply with and cause the Premises to comply with all existing or hereafter adopted governmental statutes, laws, rules, orders, regulations and ordinances, and covenants, conditions

and restrictions of record, affecting the Premises, and the use thereof, including without limitation, those which require the making of any alterations, improvements or additions to the Premises.

Landlord shall keep the foundation and the structural soundness of the exterior walls and roof of the Premises in good repair, which repairs shall be included in Operating Expenses, except that Landlord shall not be required to make any repairs occasioned by the act or neglect of Tenant, its assignees, sublessees, servants, agents, employees, invitees, licensees, customers or concessionaires, or any damage caused by or as a result of Tenant's occupancy of the Premises, or any damage caused by break-in, burglary, or other similar acts in or to the Premises. In the event that maintenance, repairs or replacements to any part of the Building (including exterior walls and roof of Building) are necessitated in whole or in part by the act, neglect, fault or omission of any duty by Tenant, its agents, servants, employees, invitees, concessionaires or customers, and such maintenance, repair or replacements are not reimbursed by insurance, Tenant shall pay to Landlord the cost of such maintenance, repairs and replacements, except that Landlord shall be responsible for replacement of all mechanicals. If the Premises should become in need of repairs required to be made by Landlord hereunder, Tenant shall give immediate written notice thereof to Landlord. Tenant waives the right to make repairs at Landlord's expense, including any right granted under any law, statute or ordinance now or hereafter in effect. Landlord's sole liability shall be limited to the cost of the repair.

Tenant shall, at its sole cost and expense, make all needed maintenance, repairs and replacements (except replacement of any structurals) to the Premises and systems serving the Premises in a prompt, good and workmanlike manner and according to standards established by Landlord, including but not limited to (i) the heating, ventilating, and air conditioning systems ("HVAC"), unless Landlord, in its discretion, has notified Tenant of Landlord's desire to maintain, repair and replace such systems, in which case the cost and expense of such services shall be payable by Tenant to Landlord upon demand; (ii) the exterior and interior portion of all doors, windows, window frames, plate glass, door closures and other hardware, door frames and store fronts; (iii) all plumbing and sewage facilities within or serving the Premises, up to the connection to the main water or sewer line; (iv) all fixtures within the Premises; (v) all sprinkler and central station reporting systems within the Premises; (vii) all interior walls, floors and ceilings; (viii) any of Tenant's improvements; (ix) all repairs, replacements or alterations required by any governmental authority; (x) all necessary repairs and replacements of Tenant's trade fixtures required for the proper conduct and operation of Tenant's business; and (xi) replace any damaged plate glass within forty-eight (48) hours of the occurrence of such damage. If Tenant shall fail to make any maintenance, repairs or replacements in and to the Premises as required in this Lease, Landlord shall have the right, but not the obligation, to enter the Premises and to make the same for and on behalf of Tenant, and all sums so expended by Landlord shall be deemed to be Additional Rent hereunder and payable to Landlord upon demand. Unless Landlord notifies Tenant otherwise, Tenant shall keep in force a standard maintenance agreement (with a copy thereof delivered to Landlord) on all heating, ventilating and air conditioning systems serving the Premises with a reputable heating and air conditioning service organization approved by Landlord.

Landlord shall not be liable to Tenant for any interruption of Tenant's business or inconvenience caused Tenant or Tenant's assigns, sublessees, customers, invitees, employees, licensees or concessionaires in the Premises on account of Landlord's performance of any repair, maintenance or replacement in the Premises, any other work therein or in the Building pursuant to Landlord's rights or obligations under this Lease so long as such work is being conducted by Landlord in accordance with the terms of this Lease and without gross negligence or gross disregard for Tenant's business operations. There shall be no abatement of Rent and no liability of Landlord by reason of any injury to or interference with Tenant's business arising from the making of any repairs, alterations or improvements in or to any portion of the Building or the Premises or in or to fixtures, appurtenances and equipment therein.

At the termination of this Lease by lapse of time or otherwise, Tenant shall return the Premises in as good condition as when Tenant took possession, ordinary wear excepted, failing which Landlord may restore the Premises to such condition and Tenant shall pay the cost thereof. Tenant may remove any floor or wall covering installed by Tenant, provided (a) Tenant also removes all nails, tacks, paper, glue, bases and other vestiges of the floor or wall covering, and restores the floor and wall surface to the condition existing before such floor or wall covering was installed, or (b) Tenant pays to Landlord, upon request, the cost of restoring the floor or wall surface to such condition. If Tenant does not remove Tenant's floor or wall coverings or any other fixtures, property or leasehold improvements from the Premises prior to the termination of the Term or Tenant's right to possession, and if Landlord does not request their removal, Tenant shall be conclusively presumed to have abandoned the same and title thereto shall thereby and thereupon pass to Landlord and this Lease shall serve as a bill of sale therefor, without payment or credit by Landlord to Tenant.

13. **Common Area**. Subject to the following, Landlord hereby grants to Tenant the right to use, in connection with the Permitted Use, and subject to the conditions herein stated, the parking areas, walkways and roadways in the area outside of the tenantable areas ("Common Area" or "Common Areas"), for the parking, ingress, egress and movement of automobiles and persons:

A. The Common Area shall be used by Tenant, its agents, employees, customers, and invitees, in common with agents, employees, customers and invitees of Landlord, and the other owners, occupants and tenants from time to time in the Building.

B. Tenant's right to use the Common Area shall terminate upon the termination of this Lease by lapse of time or otherwise, or upon termination of Tenant's right to possession.

C. Tenant shall make no use of the Common Area which shall interfere in any way with the use of the Common Area by others.

D. Use of all parking areas and other Common Areas shall be subject to the terms of this Lease and the Rules and Regulations as set forth on Rider A and such other reasonable rules and regulations as may be adopted by Landlord from time to time of which notice is provided to Tenant and which are applied in a nondiscriminatory manner to all tenants. Automobiles operated by Tenant or its employees shall be parked in designated Common Areas and no vehicles or equipment of any kind shall remain in the parking areas overnight. Upon request by Landlord, Tenant shall furnish to Landlord a complete list of the license numbers of all such automobiles. If Tenant or any employee of Tenant parks its vehicles in areas other than those designated for Tenant use, Landlord shall have the right, in its sole discretion, and without notice to Tenant, to have such vehicle physically removed at Tenant's expense without any liability whatsoever to Landlord.

E. Landlord also agrees to provide reasonable access to and from the Premises in order to permit normal trade deliveries of equipment, supplies and merchandise to and from the Premises and the removal of waste and refuse from the Premises.

F. Tenant shall not, whether temporarily, accidentally or otherwise, allow anything to remain in or on, or place or store anything in or obstruct, in any way, any sidewalk, passageway, entrance, exit, stairway, lobby corridor, hall, elevator, shipping platform or truck concourse or other area outside of the Premises and in or about the Building and shall, at its own cost and expense, repair any and all damage to the above described areas caused by Tenant or any party or parties acting under the authority or direction of Tenant.

3/16/2004

14.     **Alterations**.  Tenant shall not make any alterations in, or additions to, the Premises without Landlord's advance written consent, which consent shall not be unreasonably withheld, in each and every instance. Landlord's decision to refuse such consent shall be conclusive.  If Landlord consents to such alterations or additions, before commencement of the work or delivery of any materials onto the Premises or into the Building, Tenant shall furnish Landlord with plans and specifications, names and addresses of contractors, copies of contracts, necessary permits and indemnification in form and amount satisfactory to Landlord and waivers of lien against any and all claims, costs, damages, liabilities and expenses which may arise in connection with the alterations or additions.  All additions and alterations shall be installed in a good, workmanlike manner and only new, high-grade materials shall be used.  Whether Tenant furnishes Landlord the foregoing or not, Tenant hereby agrees to defend and hold Landlord harmless from any and all liabilities of every kind and description which may arise out of or be connected in any way with said alterations or additions.  Before commencing any work in connection with alterations or additions, Tenant shall furnish Landlord with certificates of insurance from all contractors performing labor or furnishing materials, insuring Landlord against any and all liabilities which may arise out of or be connected in any way with said additions or alterations.  Tenant shall pay the cost of all such alterations and additions and also the cost of decorating the Premises occasioned by such alterations and additions.  Upon completing any alterations or additions, Tenant shall furnish Landlord with contractors' affidavits and full and final waivers of lien and receipted bills covering all labor and materials expended and used.  All alterations and additions shall comply with all insurance requirements and with all ordinances and regulations of the local government having jurisdiction over the Building or any department or agency thereof and with the requirements of all statutes and regulations of the State of Illinois and the United States or of any department or agency thereof.  Tenant shall permit Landlord to supervise construction operations in connection with alterations or additions if Landlord requests to do so.  All additions, hardware, non-trade fixtures and all improvements, temporary or permanent, in or upon the Premises, whether placed there by Tenant or by Landlord, shall remain tenant's  property and shall be removed from Premises at the termination of this Lease by lapse of time or otherwise  at the sole cost of Tenant.  If upon Landlord's request, Tenant does not remove said additions, hardware, non-trade fixtures and improvements, Landlord may remove the same and Tenant shall pay the cost of such removal to Landlord upon demand.  Tenant shall remove Tenant's furniture, machinery, safe or safes, trade fixtures and other items of personal property of every kind and description from the Premises prior to the end of the Term, or its right to possession, however ended. If not so removed, Landlord may request their removal, and if Tenant does not remove them, Landlord may do so and Tenant shall pay the cost of such removal to Landlord upon demand.  If Landlord does not request their removal, all such items shall be conclusively presumed to have been thereupon conveyed by Tenant to Landlord under this Lease as a bill of sale without further payment or credit by Landlord to Tenant.  Tenant will not permit any mechanics lien or liens to be placed on the Building or on any improvement during the term of this Lease and, in case of the filing of such lien, Tenant will promptly pay same.  If default in payment thereof shall continue for thirty (30) days after written notice thereof from Landlord to Tenant, Landlord shall have the right and privilege at Landlord's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including expenses and interest, shall be so much additional indebtedness due hereunder from Tenant to Landlord and shall be repaid to Landlord immediately on rendition of a bill therefor.

15.     **Use of Premises**.

        A.      Tenant shall occupy and use the Premises during the term for the Permitted Use above specified and for no Prohibited Use or other purposes.  Tenant shall in good faith, continuously throughout the Term of the Lease, conduct and carry on in the entire Premises under Tenant's trade name, the type of business described on the Lease Schedule and shall not conduct or carry on any other

3/16/2004

business. Tenant shall not sell, provide, distribute or serve alcoholic beverages in, at or from the Premises.

In connection with the use and occupancy of the Premises, Tenant shall comply with all laws and ordinances and all rules and regulations of all applicable governmental authorities and all requirements of any public or private agency having authority over insurance rates and liquor licenses.

Tenant shall operate its business in a dignified manner so as to maintain a character in keeping with the rest of the Building, or as designated by Landlord.

B. Tenant shall not conduct any other business or exhibit, sell or offer for sale, on the Premises or in the Building, any article or thing except those articles and things essentially connected with the stated use of the Premises without the advance written consent of Landlord.

C. Tenant will not make or permit to be made any use of the Premises which, directly or indirectly, is forbidden by public law, ordinance or governmental regulation or which may be dangerous to life, limb or property, or which may invalidate or increase the premium cost of any policy of insurance carried on the Building or covering its operations.

D. Without Landlord's prior written permission, which shall not be unreasonably withheld, Tenant shall not paint, display, inscribe, maintain or affix any sign, placard, picture, advertisement, name, notice, lettering or direction on any part of the outside of the Premises, or on any part of the inside of the Premises which is visible from outside of the Premises, or in halls, lobbies or windows of the Building. Signs permitted by Landlord (with written approval) will comply with the requirements of the governmental authorities having jurisdiction over the Building. At its expense, Tenant shall maintain all permitted signs and will, at the end of this Lease and at its expense, remove all such permitted signs and repair any damage caused by such removal. Landlord may remove all unpermitted signs without notice to Tenant and at Tenant's sole expense.

E. Tenant shall not obstruct, or use for storage, or any purpose other than ingress and egress, the sidewalks, parking areas, driveways, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

F. No bicycle or other vehicle and no dog or other animal or bird shall be brought or permitted to be in the Building or any part thereof.

G. Tenant shall not make or permit any noise or odor that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance therein, and shall not disturb, solicit or canvass any occupant of the Building, and shall not do any act tending to injure the reputation of the Building.

H. No additional locks or similar devices shall be attached to any door or window other than what is provided by Landlord, except, the addition of burglar bars and bollards shall be permitted with prior written consent of landlord which shall not be unreasonably withheld. Upon termination of this Lease or of Tenant's possession, Tenant shall surrender all keys of the Premises and shall make known to Landlord the explanation of all combination locks on safes, cabinets and vaults. If Tenant desires more than two (2) keys per lock, as supplied by Landlord, Landlord may provide same upon payment by Tenant.

I.     Tenant shall be responsible for the locking of doors and the closing of transoms and windows in and to the Premises.

J.     If Tenant desires, and if Landlord permits, blinds, shades, awnings, or other form of inside or outside window covering, or window ventilators or similar devices, shall be furnished, installed and maintained at the expense of Tenant and must be of such shape, color, material and make as approved by Landlord.

K.     Excluding access directly to the Premises from the public ways, all persons entering or leaving the Building between the hours of 9:00 p.m. and 8:30 a.m. may be required to identify themselves to a watchman by registration or otherwise and to establish their rights to enter or leave the Building. Landlord may exclude or expel any peddler, solicitor or beggar at any time.

L.     Tenant shall not overload any floor. Landlord may direct the routing and location of safes, equipment and other heavy articles. Safes, furniture and all large articles shall be brought directly (not through other portions of the Building) in such manner as Landlord shall direct and at Tenant's sole risk and responsibility.

M.     Tenant shall not place or allow anything to be against or near the glass or partitions or doors of the Premises directly accessible to other parts of the Building which may diminish the light in, or be unsightly from, halls or corridors.

N.     The violation of any covenant of this Section 15 or Section 13, in addition to any other remedies available to Landlord for default of a covenant of this Lease, may be restrained by injunction. In addition, Landlord may, at Landlord's option and at Tenant's expense, cause the cure of such default, notwithstanding that Tenant may have a cure period as may be provided elsewhere in this Lease. Tenant shall, upon demand, reimburse Landlord for the cost thereof.

O.     Tenant shall pay to Landlord an amount equal to any increase in insurance premium or premiums caused by the conduct of Tenant's business in the Premises. In addition to all other liabilities for breach of any covenant of this Section 15, Tenant shall pay to Landlord all damages directly caused by such breach and shall also pay to Landlord an amount equal to any increase in insurance premium or premiums caused by such breach.

P.     Tenant shall be liable and responsible for installing and maintaining any and all telephone and computer lines in the Building serving the Premises. Such lines shall be installed in areas designated by the Landlord, and Tenant shall be liable for and hereby agrees to indemnify and hold Landlord harmless from any liability or damage to any other telephone or computer lines or Building systems damaged or interfered with as a result of Tenant's installation or maintenance of its telephone or computer lines.

Q.     Tenant shall be liable and responsible for all snow removal for the building.

16.     **Repairs**. Subject to the provisions of Section 14, Tenant shall, at Tenant's own expense, keep the Premises in good order, condition and repair during the Term and in compliance with all governmental codes and regulations, including the replacement of all broken glass for which Tenant was responsible, with glass of the same size and quality, with signs thereon, under the supervision and with the approval of Landlord. If Tenant does not make repairs promptly and adequately, Landlord may, but need not, make repairs and Tenant shall pay promptly the cost thereof.

3/16/2004

At any time or times, Landlord, either voluntarily or pursuant to governmental requirement, may, at Landlord's own expense, make repairs, alterations or improvements in or to the Building or any part thereof, including the Premises, and, during operations, may close entrances, parking areas, driveways, sidewalks, doors, corridors, elevators or other facilities, all without any liability to Tenant by reason of interference, inconvenience or annoyance. Landlord shall not be liable to Tenant for any expense, injury, loss or damage resulting from work done in or upon, or the use of, any adjacent or nearby building, land, street or alley. Tenant shall pay Landlord for overtime and for any other expenses incurred in the event repairs, alterations, decorating or other work in the Building are not made during ordinary business hours at Tenant's request.

17. **Untenantability**. Tenant shall give prompt notice to Landlord in case of any fire or other damage to the Premises. If (a) the Premises shall be damaged to the extent of fifty percent (50%) or more of the cost of replacement thereof during the last two (2) years of the Term or (b) the Building shall be damaged to the extent of fifty percent (50%) or more of the cost of replacement thereof whether or not the Premises shall be damaged, then in either of such events, Landlord shall have the right and option to cancel this Lease by written notice within ninety (90) days after the date of notice of such occurrence, and thereupon this Lease shall cease and terminate with the same force and effect as though such date were the date fixed for the expiration of the Term. In such case, Tenant shall vacate and surrender the Premises to Landlord and, in such event, Tenant's liability for the Rent and other charges reserved hereunder, excluding indemnity obligations of Tenant, shall cease as of the date of such damage or destruction and Landlord shall make an equitable refund of any Rent or other charges paid by Tenant in advance and not earned or accrued. Tenant covenants and agrees to pay to Landlord the insurance proceeds payable to Tenant with respect to leasehold improvements under the fire insurance policies mentioned under Section 22B, which obligation shall survive the expiration of the Term. Unless this Lease is terminated by Landlord as aforesaid, this Lease shall remain in full force and effect and the parties waive the provisions of any law to the contrary, and Landlord and Tenant agree that the Premises shall be repaired and restored with due diligence to substantially the condition thereof immediately prior to such damage or destruction. Landlord's obligation to repair and restore shall be limited to the amount of insurance proceeds received by Landlord. In no event shall Landlord be required to replace or restore additions, improvements or alterations to the Premises made by or at the expense of Tenant unless Landlord shall have received the proceeds of the insurance policies mentioned under Section 22B, and in such event, Landlord's obligation shall be limited to the amount of such proceeds actually received by Landlord. Landlord shall have no obligation to replace or restore office furniture or equipment, trade fixtures, merchandise, samples, supplies or any other items of Tenant's property in the Premises or the Building. If by reason of such fire or other casualty the Premises are rendered wholly untenantable, the Rent shall be abated, or if only partially damaged, the Rent shall be abated proportionately as to that portion of the Premises rendered untenantable; in either event, until thirty (30) days after notice by Landlord to Tenant that the Premises have been substantially repaired and restored or until Tenant's operations are substantially restored in the entire Premises, whichever shall occur sooner.

18. **Eminent Domain**. If the Building, or any portion thereof which includes a substantial part of the Premises, or which prevents the operation of the Building, shall be taken or condemned by any competent authority for any public use or purpose or sold in lieu thereof, the Term of this Lease shall end upon, and not before, the date when the possession of the part so taken shall be required for such use or purpose, and without apportionment of the condemnation award. Tenant shall have no right to share in such award. Current Rent shall be apportioned as of the date of such termination. If any condemnation proceeding shall be instituted in which it is sought to take or damage any part of the Building, or the land under it or used in its operation, or if the grade of any street or alley adjacent to the Building is changed by any

3/16/2004

competent authority and such change of grade makes it necessary or desirable to remodel the Building to conform to the changed grade, Landlord shall have the right to cancel this Lease upon not less than ninety (90) days notice prior to the date of cancellation designated in the notice. No money or other consideration shall be payable by Landlord to Tenant for the right of cancellation and Tenant shall have no right to share in the condemnation award or in any judgment for damages caused by the condemnation, including but not limited to any claim for the value of its leasehold interest. Nothing contained in this Section 18 shall be deemed to preclude Tenant's right to pursue any claim it may have against the condemning authority for damages or an award in the amount of relocation or other expenses or any other right afforded Tenant by the condemning authority.

19. **Hazardous Substances**.

A. **Compliance with Laws and Regulations**. Tenant hereby represents, warrants, covenants and agrees to and with Landlord that all operations or activities upon, or any use or occupancy of the Premises, or any portion thereof, by Tenant, and any tenant, subtenant or occupant of the Premises, or any portion thereof, shall throughout the term of this Lease be in all respects in compliance with all state, federal and local laws and regulations governing or in any way relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal (whether legal or illegal, accidental or intentional) of any hazardous or toxic substances, materials or wastes, including but not limited to those substances, materials or wastes listed in the United States Department of Transportation Table (49 CFR 172.101) or by the Environmental Protection Agency as hazardous substances (40 CFR Part 302) and amendments thereto, or such substances, materials or wastes otherwise regulated under any applicable local, state or federal law ("Hazardous Substances"); and that neither Tenant nor any other tenant, subtenant or occupant of the Premises, or any portion thereof, at any time shall be engaged in or permitted any dumping, discharge, disposal, spillage or leakage (whether legal or illegal, accidental or intentional) of such Hazardous Substances at, on, in or about the Premises, or any portion thereof.

B. **PCB's Removal**. For the purpose of this section, "PCB" shall mean any oil or other substance containing polychlorinated biphenyl (as defined in 40 CFR §761.3). Tenant hereby covenants and agrees to and with Landlord that Tenant shall, through the term of this Lease, not permit to be present upon the Premises, or any portion thereof, or contained in any transformers or other equipment thereon, any PCB's.

C. **Asbestos Removal or Containment**. Tenant hereby covenants and agrees to and with Landlord that Tenant shall, through the term of this Lease, not permit to be present upon the Premises, or any portion thereof, any asbestos, or any structures, fixtures, equipment or other objects or materials containing asbestos.

D. **Indemnification; Remedial Work**.

(i) Tenant agrees to indemnify, protect, defend (with counsel reasonably approved by Landlord) and hold Landlord, and the directors, officers, shareholders, employees and agents of Landlord, harmless from any claims (including without limitation third party claims for personal injury or real or personal property damage), actions, administrative proceedings (including informal proceedings), judgments, damages, punitive damages, penalties, fines, costs, liabilities (including sums paid in settlement of claims), interest or losses, including reasonable attorneys' and paralegals' fees and expenses (including any such fees and expenses incurred in enforcing this Lease or collecting any sums due

hereunder), consultant fees, and expert fees, together with all other costs and expenses of any kind or nature (collectively, the "Costs") that arise directly or indirectly from or in connection with the presence, suspected presence, release or suspected release by Tenant, its officers, agents, contractors, employees, subtenants or assigns, of any Hazardous Substance in or into the air, soil, surface water, groundwater or soil vapor at, on, about, under or within the Building, or any portion thereof. In the event Landlord shall suffer or incur any such Costs, Tenant shall pay to Landlord the total of all such Costs suffered or incurred by Landlord upon demand therefor by Landlord. Without limiting the generality of the foregoing, the indemnification provided by this Section 19D(i) shall specifically cover Costs, including capital, operating and maintenance costs, incurred in connection with any investigation or monitoring of site conditions, any clean-up, containment, remedial, removal or restoration work required or performed by any federal, state or local governmental agency or political subdivision or performed by any non-governmental entity or person because of the presence, suspected presence, release or suspected release of any Hazardous Substance in or into the air, soil, groundwater, surface water or soil vapor at, on, about, under or within the Building (or any portion thereof), and claims of third parties for loss or damage due to such Hazardous Substance.

(ii)     In the event any investigation or monitoring or site conditions of any clean-up, containment, restoration, removal or other remedial work (collectively the "Remedial Work") is required by any applicable federal, state or local law or regulation, by any judicial order, or by any governmental entity, or in order to comply with any agreements because of, or in connection with, any occurrence or event described in Section 19D(i) above, Tenant shall perform or cause to be performed the Remedial Work in compliance with such law, regulation, order or agreement; provided, that Tenant may withhold such compliance pursuant to a good faith dispute regarding the application, interpretation or validity of the law, regulation, order or agreement. All Remedial Work shall be performed by one or more contractors, selected by Tenant and approved in advance in writing by Landlord, and under the supervision of a consulting engineer, selected by Tenant and approved in advance in writing by Landlord. All costs and expenses of such Remedial Work shall be paid by Tenant, including without limitation, the charges of such contractor(s) and/or the consulting engineer, and Landlord's reasonable attorneys' and paralegals' fees and costs incurred in connection with monitoring or review of such Remedial Work. In the event Tenant shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Landlord may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, shall be Costs within the meaning of Section 19D(i) above. All such Costs shall be due and payable upon demand therefor by Landlord.

E.     **Survival**.
Landlord shall, within 90 days after occupancy, provide a Phase-I Environmental Report on Tenants space stating that the space is free and clear of any environmental conditions.  Tenant shall furnish Landlord a Phase-I Environmental Report within 90 days after lease termination, stating that they have left the space free and clear of any environmental conditions.  If Landlord is unable to provide said report to Tenant then Item E shall be stricken from lease.  If Tenant cannot provide a free and clear report to Landlord, then they shall proceed to remediate area in order to provide such report.

20. **Landlord's Remedies**. All rights and remedies of Landlord herein enumerated shall be cumulative, and none shall exclude any other right or remedy allowed by law.

    A.    If a petition in a bankruptcy or insolvency, or for the reorganization, or for the appointment of a receiver or trustee of all or a portion of the property of Tenant or any Guarantor shall be filed against Tenant or any Guarantor in any court, pursuant to any statute, either of the United States or of any State, and if, within thirty (30) days thereafter, Tenant or any Guarantor fails to secure a discharge thereof, or if Tenant or any Guarantor shall voluntarily file any such petition or make an assignment for the benefit of creditors or petition for or enter into an arrangement, or if this Lease is taken under writ of execution (herein called "Act of Bankruptcy"), then Tenant shall be deemed in breach and default of this Lease and Landlord, in its discretion and at its election, may, to the extent permitted by law, elect to cancel and terminate this Lease. Upon the cancellation and termination of this Lease pursuant to the provisions of this Subsection 20A, Landlord, in addition to all the remedies provided by law, shall be entitled to the remedies provided in this Section 20. If this Lease is assumed or assigned by a trustee pursuant to the provisions of the Bankruptcy Reform Act of 1978 ("Bankruptcy Act") (11 U.S.C. Section 101 et. seq.), then the trustee shall cure any default under this Lease and shall provide such adequate assurances of future performance of this Lease as are required by the Bankruptcy Act (including, but not limited to, the requirements of Section 365(b)(1)). If the trustee does not cure such defaults and provide such adequate assurances under the Bankruptcy Act, then this Lease shall be deemed rejected and Landlord shall have the right to immediate possession of the Premises and shall be entitled to all remedies provided by the Bankruptcy Act for damages for breach and/or termination of this Lease.

    B.    If (1) Tenant defaults in the payment of Rent as the same shall become due (in which case no notice or demand from Landlord for payment shall be necessary); (2) the leasehold interest of Tenant be levied upon under execution or be attached by law; (3) Tenant or any Guarantor suffers or commits an Act of Bankruptcy; (4) a receiver be appointed for any property of Tenant; (5) Tenant abandons the Premises for more than thirty (30) days; or (6) Tenant defaults in the prompt and full performance of any other provision of this Lease, and Tenant does not cure the default under this subsection (6) within thirty (30) days (forthwith if the default involves a hazardous condition) after written demand by Landlord that the default be cured (unless the default involves a hazardous condition, which shall be cured forthwith upon Landlord's demand); then and in any such event, Landlord may, if Landlord so elects but not otherwise, and with notice of such election, forthwith terminate this Lease or Tenant's right to possession of the Premises. Upon any such termination of this Lease, and as determined by Landlord any and all damages shall be mitigated between Landlord and Tenant. In addition to the foregoing and any other remedy it may have, in the event of a default pursuant to subsection (6) above, Landlord may perform any act or contract for the performing thereof and incur any expense reasonably related thereto, and thereafter Tenant shall pay same to Landlord within thirty (30) days after demand.

    C.    Upon any termination of this Lease, whether by lapse of time or otherwise, or upon any termination of Tenant's right to possession without termination of the Lease, Tenant shall surrender possession and vacate the Premises immediately, and deliver possession thereof to Landlord. Tenant hereby grants to Landlord full and free license to enter into and upon the Premises in the event of such termination, with or without process of law, and to take possession of the Premises. Landlord may expel or remove Tenant and any others who may be occupying the Premises. Landlord may remove any and all property from the Premises, using such force as

may be necessary, without being deemed in any manner guilty of trespass, eviction or forcible entry or detainer. The exercise by Landlord of any of the remedies reserved under this Section 20C shall not constitute a waiver or election by Landlord with respect to Landlord's rights to Rent or any other right given to Landlord elsewhere in this Lease or by operation of law.

D.      If Tenant abandons the Premises or otherwise entitles Landlord so to elect, and Landlord elects to terminate Tenant's right to possession only, without terminating the Lease, Landlord may, at Landlord's option, enter into the Premises, remove Tenant's signs or other evidence of tenancy, and take and hold possession thereof as in Paragraph (C) of this Section 20, provided, without such entry and possession terminating the Lease or releasing Tenant, in whole or in part, from Tenant's obligation to pay the Rent hereunder for the full Term, and in any case Tenant shall pay forthwith to Landlord, if Landlord so elects, a sum equal to the entire amount of the Rent specified in Sections 1 and 2 of this Lease for the residue of the stated Term plus any other sums then due hereunder. Upon and after entry into possession without termination of the Lease, Landlord may, but need not, relet the Premises or any part thereof for the account of Tenant to any person, firm or corporation other than Tenant for such rent, for such time and upon such terms as Landlord, in Landlord's sole discretion, shall determine, and Landlord shall not be required to accept any tenant offered by Tenant or to observe any instructions given by Tenant about such reletting. In any case, Landlord may make repairs, alterations and additions in or to the Premises, and redecorate the same to the extent deemed by Landlord necessary or desirable, and Tenant shall, upon demand, pay the cost thereof, together with Landlord's expenses of the reletting, including but not limited to leasing commissions. If the consideration collected by Landlord upon any such reletting for Tenant's account is not sufficient to pay monthly the full amount of the Rent reserved in this Lease, together with the costs of repairs, alterations, additions, redecorating and Landlord's expenses, Tenant shall pay to Landlord the amount of each monthly deficiency upon demand; and if the consideration so collected from any such reletting is more than sufficient to pay the full amount of the Rent reserved herein, together with the costs and expenses of Landlord, Landlord, at the end of the stated Term of the Lease, shall account for the surplus to Tenant.

E.      Any and all property which may be removed from the Premises by Landlord pursuant to the authority of this Lease or of law, to which Tenant is or may be entitled, may be handled, removed or stored by Landlord at the risk, cost and expense of Tenant, and Landlord shall in no event be responsible for the value, preservation or safekeeping thereof. Tenant shall pay to Landlord, upon demand, any and all expenses incurred in such removal and all storage charges against such property so long as the same shall be in Landlord's possession or under Landlord's control. Any such property of Tenant not removed from the Premises, not otherwise transferred to Landlord hereunder, or retaken from storage by Tenant within thirty (30) days after the end of Tenant's right to possession of the Premises, however terminated, shall be presumed to have been conveyed by Tenant to Landlord under this Lease as a bill of sale without further payment or credit by Landlord to Tenant.

F.      Tenant shall pay upon demand all Landlord's reasonable costs, charges and expenses, including the fees of counsel, agents and others retained by Landlord, incurred in enforcing Tenant's obligations hereunder or incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord, without Landlord's fault, to become involved or concerned.

21.     **Landlord's Default.** If Landlord defaults in the prompt and full performance of any provision of this Lease and does not cure the default within thirty (30) days after notice from Tenant (which thirty [30] day period shall be extended so long as Landlord commences cure thereof within said thirty [30] day period and thereafter diligently pursues said cure), Tenant may pursue its lawful remedies but may not terminate the

Lease.

22. **Insurance**.

A. **Waiver**. Landlord and Tenant hereby waive any rights each may have against the other on account of any loss or damage occasioned by Landlord or Tenant, as the case may be, their respective property, the Premises, or its contents or to other portions of the Building, arising from any risk actually covered or to be covered by fire and extended coverage insurance policies required hereunder. The parties each, on behalf of their respective insurance companies insuring the property of either Landlord or Tenant against such loss, and to the extent same is permitted pursuant to said policies, waive any right of subrogation that such companies may have against Landlord or Tenant, as the case may be. Landlord and Tenant covenant with each other that, to the extent such insurance endorsement is reasonably available, they will each obtain for the benefit of the other a waiver of any right of subrogation from their respective insurance companies.

B. **Tenant's Insurance**. Tenant shall procure and maintain policies of insurance, at its own cost and expense, insuring:

(i) the Landlord Protected Parties (as "named insureds"), and Landlord's mortgagee, if any, of which Tenant is given written notice, and Tenant Protected Parties, from all claims, demands or actions made by or on behalf of any person or persons, firm or corporation and arising from, related to or connected with the Premises, or Tenant's use of the Premises, Common Area or Building, for bodily injury to or personal injury to or death of any person, or more than one (1) person, or for damage to property in an amount of not less than $2,000,000.00 combined single limit per occurrence/aggregate. Said insurance shall be written on an "occurrence" basis and not on a "claims made" basis. If at any time during the term of this Lease, Tenant owns or rents more than one location, the policy shall contain an endorsement to the effect that the aggregate limit in the policy shall apply separately to each location owned or rented by Tenant. Landlord shall have the right, exercisable by giving written notice thereof to Tenant, to require Tenant to increase such limit if, in Landlord's reasonable judgment, the amount thereof is insufficient to protect the Landlord Protected Parties and Tenant Protected Parties from judgments which might result from such claims, demands or actions. If Tenant is unable, despite reasonable efforts in good faith, to cause its liability insurer to insure the Landlord Protected Parties as "named insureds," Tenant shall nevertheless cause the Landlord Protected Parties to be insured as "additional insureds" and in such event, Tenant will protect, indemnify and save harmless the Landlord Protected Parties from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses) imposed upon or incurred by or asserted against the Landlord Protected Parties, or any of them, by reason of any bodily injury to or personal injury to or death of any person or more than one person or for damage to property, occurring on or about the Premises, or in connection with Tenant's use of the Premises, Common Area or Building, caused by any party, including, without limitation, any Landlord Protected Party, to the extent of the amount of the insurance required to be carried under this section or such greater amount of insurance as is actually carried. Tenant shall cause its liability insurance to include contractual liability coverage fully covering the indemnity hereinabove set forth.

(ii) all contents and Tenant's trade fixtures, personal property, machinery, equipment, furniture and furnishings in the Premises to the extent of one hundred percent (100%) of their replacement cost under Standard Fire and Extended Coverage Policy and all other

18                                                                                   3/16/2004

risks of direct physical loss as insured against under Special Form ("all risk") coverage. Said insurance shall contain an endorsement waiving the insurer's right of subrogation against any Landlord Protected Party, provided that such waiver of the right of subrogation shall not be operative in any case where the effect thereof is to invalidate such insurance coverage or increase the cost thereof (except that Landlord shall have the right, within thirty [30] days following written notice, to pay such increased cost, thereby keeping such waiver in full force and effect).

(iii)    the leasehold improvements to the Premises and improvements at any time situated upon the Premises against loss or damage by fire, lightning, wind storm, hail storm, aircraft, vehicles, smoke, explosion, riot or civil commotion as provided by the Standard Fire and Extended Coverage Policy and all other risks of direct physical loss as insured against under Special Form ("all risk") coverage. The insurance coverage shall be for the full replacement cost of such leasehold improvements with agreed amount endorsement. Landlord shall be named as the insured and all proceeds of insurance shall be payable to Landlord. Said insurance shall contain an endorsement waiving the insurer's right of subrogation against any Tenant Protected Party, provided that such waiver of the right of subrogation shall not be operative in any case where the effect thereof is to invalidate such insurance coverage or increase the cost thereof (except that Tenant shall have the right, within thirty [30] days following written notice, to pay such increased cost, thereby keeping such waiver in full force and effect).

(iv)    host liquor liability in limits reasonably acceptable to Landlord (but not in excess of the liability limits set forth in (i) above) but in no event less than the minimum required by statute.

(v)    such other risks as reasonably determined by Landlord.

C.    **Landlord's Insurance**.

(i)    All claims, demands or actions made by or on behalf of any person or persons, firm or corporation and arising from, related to or connected with the Building, other than premises leased to tenants, for bodily injury to or personal injury to or death of any person, or more than one (1) person, or for damage to property, in an amount of not less than $2,000,000.00 combined single limit per occurrence/aggregate. Said insurance shall be written on an "occurrence" basis and not on a "claims made" basis. If at any time during the term of this Lease, Landlord owns more than one location, the policy shall contain an endorsement to the effect that the aggregate limit in the policy shall apply separately to each location owned by Landlord.

(ii)    The Building and improvements (excluding leasehold improvements) at any time situated in or upon the Building against loss or damage by fire, lightning, wind storm, hail storm, aircraft, vehicles, smoke, explosion, riot or civil commotion as provided by the Standard Fire and Extended Coverage Policy and all other risks of direct physical loss as insured against under Special Form ("all risk") coverage. The insurance coverage shall be for not less than ninety percent (90%) of the full replacement cost of such improvements with agreed amount endorsement. Landlord shall be named as the insured and all proceeds of insurance shall be payable to Landlord. Said insurance shall contain an endorsement waiving the insurer's right of subrogation against any Tenant Protected Party, provided that such waiver of the right of subrogation shall not be operative in any case where the effect thereof is to invalidate such insurance coverage or increase the cost thereof (except

that Tenant shall have the right, within thirty [30] days following written notice, to pay such increased cost, thereby keeping such waiver in full force and effect).

(iii)     Such other risks as reasonably determined by Landlord.

D.     **Form of Insurance**. All of the aforesaid insurance shall be in responsible companies. As to Tenant's insurance, the insurer and the form, substance and amount (where not stated above) shall be satisfactory from time to time to Landlord and any mortgagee of Landlord, and shall unconditionally provide that it is not subject to cancellation, material modification or non-renewal except after at least thirty (30) days prior written notice to Landlord and any mortgagee of Landlord. Originals of Tenant's insurance policies (or certificates thereof satisfactory to Landlord), together with satisfactory evidence of payment of the premiums thereon, shall be deposited with Landlord at the Commencement Date and renewals thereof not less than thirty (30) days prior to the end of the term of such coverage.

E.     **Indemnity**. Tenant agrees to protect, indemnify and save Landlord Protected Parties harmless from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) imposed upon or incurred by or asserted against Landlord Protected Parties, or any of them, by reason of (a) any failure on the part of Tenant to perform or comply with any of the terms of this Lease; or (b) performance of any labor or services or the furnishing of any materials or any property in respect to the Premises or any part thereof. In case any action, suit or proceeding is brought against Landlord by reason of any such occurrence, Tenant will, at Tenant's expense, by counsel approved by Landlord, resist and defend such action, suit or proceeding, or cause the same to be resisted and defended.

23.     **Subordination of Lease**. The rights of Tenant under this Lease shall be and are subject and subordinate at all times to the lien of any mortgage, mortgages, ground or underlying lease, trust deed, trust deeds, or long-term leases in the form of a mortgage, now or hereafter in force against the Building or the underlying leasehold estate, if any, and to all advances made or hereafter to be made upon the security thereof, and Tenant shall execute such further instruments subordinating this Lease to the lien or liens of any such mortgage, mortgages, ground or underlying lease, trust deed, trust deeds, or long-term leases in the form of a mortgage, as shall be required by Landlord. All Tenant-owned goods, merchandise, temporary fixtures and equipment are excluded from any liens by or to Landlord's lenders or mortgages covering premises.

24.     **Sale of Premises by Landlord**. Any sale or exchange by Landlord of its interest in the Premises or Building shall be subject to this Lease and the rights and obligations of Tenant hereunder; and Tenant shall attorn to Landlord's grantee or transferee. Upon any such sale or exchange and the assignment by Landlord of this Lease, Landlord shall be and is hereby entirely freed and relieved of all liability under any and all of its covenants and obligations contained in or derived from this Lease arising out of any act, occurrence or omission relating to the Premises or Building or this Lease occurring after the consummation of such sale or exchange and assignment.

25.     **Estoppel Certificate**. Tenant shall from time to time, upon not less than ten (10) days prior written request by Landlord, deliver to Landlord a statement in writing certifying:

A.     That this Lease is unmodified and in full force and effect or, if there have been modifications, that the Lease as modified is in full force and effect;

B.     The dates to which Rent and other charges have been paid;

3/16/2004

C.      That Landlord is not in default under any provision of this Lease or, if in default, a detailed description thereof; and

D.      Such other reasonable statements, to Tenant's knowledge.

If Tenant shall fail to execute and deliver such statement within said ten (10) days, then Tenant hereby authorizes Landlord, as its agent and attorney-in-fact, to execute such statement on Tenant's behalf.

26.     **Notices**.  In every instance where it shall be necessary or desirable for Landlord to serve any notice or demand upon Tenant, it shall be sufficient (a)  to send a written copy thereof by United States certified or registered mail, postage prepaid, addressed to Tenant at  3305 Breckinridge Blvd., Suite 122, Duluth, GA 30096, in which event, notice or demand shall be deemed to have been served two (2) business days after the date the copy is posted.  All notices or demands shall be signed by or on behalf of Landlord.  Any notice or demand from Tenant to Landlord shall be in writing and deemed served when received by Landlord or the Agent for Owner at the Place of Payment of Rent and Address for Notices or two (2) business days after mailing if mailed by United States certified or registered mail, postage prepaid, addressed to Landlord at the Place of Payment of Rent and Address for Notices, or at such other or additional addresses as Landlord shall specify by notice to Tenant.

27.     **Miscellaneous**.

A.      No receipt of money by Landlord from Tenant after the termination of this Lease or after the service of any notice or after the commencement of any suit, or after final judgment for possession of the Premises shall renew, reinstate, continue or extend the Term of this Lease or affect any such notice, demand or suit.

B.      No waiver of any default of Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such default if such default persists or be repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated.  The invalidity or unenforceability of any provision hereof shall not affect or impair any other provision.

C.      The words "Landlord" and "Tenant", wherever used in this Lease, shall be construed to mean "Landlords" or "Tenants" in all cases where there is more than one lessor or lessee, and the necessary grammatical changes required to make the provisions hereof apply either to corporation or individuals, men or women, shall in all cases be assumed as though in each case fully expressed.  In the event more than one party is named as Tenant hereunder, the obligations shall be the joint and several obligations of said parties.  In connection with any notice or other communication given by or on behalf of Tenant, same shall be deemed effective and binding for all parties designated as Tenant only if given by all such parties designated as Tenant.

D.      Each provision hereof shall extend to and shall, as the case may require, bind and inure to the benefit of Landlord and Tenant and their respective heirs, legal representatives and successors, and assigns in the event this Lease has been assigned with the consent of Landlord as herein provided.

E.      The headings of sections are for convenience only and do not limit or construe the contents of the sections.

F.  Submission of this instrument for examination does not constitute a reservation of or option for the Premises. The instrument becomes effective as a lease upon execution and delivery by both Landlord and Tenant.

G.  All amounts (other than Base Rent and Additional Rent) owed by the Tenant to Landlord hereunder shall be paid within ten (10) days from the date Landlord renders a statement of account therefor and shall bear interest thereafter at the rate of the lesser of (i) four percent (4%) per annum plus the then current prime rate of interest established by Bank One, or its successor, or (ii) the maximum rate permitted by law thereafter until paid.

H.  Provisions typed on the face of this Lease and initialed by Landlord and Tenant, and all Riders attached to this Lease, are hereby made a part of this Lease as though inserted at length in this Lease.

I.  If Tenant shall occupy the Premises prior to the beginning of the stated Term of this Lease with Landlord's consent, all the provisions of this Lease shall be in full force and effect as soon as Tenant occupies the Premises and Rent for any such period prior to the beginning of the stated Term of this Lease shall be paid by Tenant on the basis of the pro rated portion of the Rent set forth in Sections 1 and 2.

In the event Landlord is unable to deliver possession of the Premises on the Commencement Date by reason of the hold-over or retention of possession by any tenant or occupant, this Lease shall nevertheless continue in full force and effect, but Rent shall abate until the Landlord is able to deliver possession and Landlord shall have no other liability whatsoever on account thereof.

J.  This Lease is the entire understanding of the parties and the terms and provisions of this Lease shall only be modified or amended in writing.

K.  If this Lease is executed by more than one individual, corporation, partnership, association or other entity as Tenant, the obligations of each of said parties shall be joint and several.

L.  The individual signing this Lease on behalf of Tenant hereby represents that he is authorized to do so and his execution, in the capacity indicated, shall serve to bind Tenant.

28.  **Additional Construction**. Landlord reserves the right at any time to make alterations, expansions or additions to the Building and to build adjoining the same. Without limiting the foregoing, Landlord specifically reserves the right at any time to do, or permit to be done, any or all of the following: add buildings, floors or structures; change the number and location of buildings and structures; change Building dimensions; add to, alter or remove partially or wholly any structure or structures used to enclose any area; change the identity and type of stores and tenancies and the dimensions thereof; change the name of the Building in which the Premises are located; change the address or designation of the Premises or the Building; provide subterranean and multiple level parking decks, convert Common Areas into leasable areas; and expand the size of the Building by acquiring or making available additional land; provided however, that no such changes shall materially alter the size of the Premises or deny reasonable ingress to and egress from the Premises. By executing this Lease, Tenant consents to a change in Tenant's Proportionate Share attributable to the Premises caused by any alteration, expansion or addition to the Building.

29.  **Trash Removal**. Landlord shall have the right to designate from time to time during the Term, reasonable places in or about the Building where Tenant shall place and deposit trash, garbage, waste paper, dirt and other like materials. Tenant shall promptly and strictly comply with all reasonable rules and

regulations of Landlord, and with all health, sanitary and other regulations of Landlord, and with all health, sanitary and other laws and ordinances in the placing, depositing, handling and removal of such materials from the Premises and from the Building. Tenant shall be solely responsible for all scavenger costs.

30. **Brokers**. Tenant represents and warrants to Landlord that neither Tenant nor its officers or agents nor anyone acting on Tenant's behalf has dealt with any real estate brokers to whom any commissions due other than Olderman Realty & Development to whom a commission shall be paid by Landlord. Tenant agrees to indemnify, defend and hold harmless Landlord and Agent for Owner from the claim or claims of any other broker or brokers (except Olderman Realty & Development) claiming to have interested Tenant in the Building or the Premises or claiming to have caused Tenant to enter into this Lease.

31. **Security Deposit**. As additional security for the faithful and prompt performance of its obligation under this Lease, Tenant has, concurrently with the execution of this Lease, deposited with Landlord the sum of One (1) month's rent Landlord, at its sole discretion, may apply any part or all of the Security Deposit for the purpose of curing all or any part of any default or defaults of Tenant hereunder. Tenant agrees to pay to Landlord, upon ten (10) days written notice, a sum of money that at all times during the continuance of this Lease the Security Deposit will equal two (2) month's installment of Rent at the then current rate, including Base Rent and Additional Rent. Landlord shall not pay any interest on the Security Deposit except as required by law. After the termination of this Lease if the Tenant is not in default, Landlord shall return to Tenant the Security Deposit, or so much thereof that has not been expended by Landlord to cure any default of Tenant. The Security Deposit is not an advance payment of Rent or a measure of Landlord's damages for any default of Tenant. Tenant shall also provide Landlord with financial reports on an annual basis.

32. **Limitation on Landlord's Liability**. It is expressly understood and agreed by Tenant that none of Landlord's covenants, undertakings or agreements are made or intended as personal covenants, undertakings or agreements by Landlord, its agents, or Agent for Owner, and any liability for damage or breach or non-performance by Landlord shall be collectible only out of Landlord's interest in the Building and no personal liability is assumed by, nor at any time may be asserted against, Landlord, its agent, or Agent for Owner, or any of its or their officers, agents, employees, legal representatives, successors or assigns, all such liability, if any, being expressly waived and released by Tenant.

33. **Force Majeure**. Whenever a period of time is provided in this Lease for any party to do or perform any act or thing, such party shall not be liable or responsible for any delays due to strikes, lockouts, actions of labor unions, casualties, condemnation, acts of God, fire, acts of the elements, war, riot, inability to procure or a general shortage of labor, equipment, materials or supplies in the open market, failure of transportation, court orders, laws or governmental regulation or control or other causes beyond the reasonable control of such party, and in any such event, said time period shall be extended for the amount of time such party is so delayed; provided however, the foregoing shall not apply to financial inability.

34. **Events of Bankruptcy and Receivership**.

   A.    For purposes of this Lease, the following shall be deemed "Events of Bankruptcy" of Tenant: (i) if Tenant becomes "insolvent", as defined in Title 11 of the United States Code, entitled "Bankruptcy", 11 U.S.C. Section 101 et seq. as amended, or any successor statute (hereinafter called the "Bankruptcy Code"), or under the insolvency laws of any state, district, commonwealth or territory of the United States of America ("Insolvency Laws"); or (ii) if Tenant files a voluntary petition under the Bankruptcy Code or Insolvency Laws; or (iii) if a receiver or custodian is appointed for any or all of Tenant's property or assets, or if there is instituted a foreclosure action on any of Tenant's property, or (iv) if there is filed an involuntary petition against Tenant as the

subject debtor under the Bankruptcy Code or Insolvency Laws, which is not dismissed within thirty (30) days of filing, or results in issuance of an order for relief against the debtor; or (v) if Tenant makes or consents to an assignment of its assets, n whole or in part, for the benefit of creditors, or a common law composition of creditors.

B.　　Upon the occurrence of an Event of Bankruptcy, or if Tenant takes advantage of any Insolvency Laws, then in any such event, Landlord, at its option and sole discretion, may terminate this Lease at any time by written notice to Tenant (subject, however, to applicable provisions of the Bankruptcy Code or Insolvency Laws during the pendency of any action thereunder involving Tenant as the subject debtor). If this Lease is terminated under this Section, Tenant shall immediately surrender and vacate the Premises, waives all statutory or other notice to quit, and agrees that Landlord's obligations under this Lease shall cease from such termination date, and Landlord may recover possession by process of law or in any other lawful manner. Furthermore, if this Lease terminates under this Paragraph (b), Landlord shall have all rights and remedies against Tenant provided in case of default of Tenant in the payment of Base Annual Rent and/or Additional Rent. Tenant hereby acknowledges that it has abandoned all of its personal property remaining in the Premises after Tenant surrenders possession of the Premises, and Tenant hereby authorizes Landlord to dispose of such personal property in any manner Landlord deems appropriate without accounting to Tenant or its legal representative for the proceeds thereof. Notwithstanding the foregoing, Landlord retains the right to assert an administrative claim and a general unsecured claim that result from a breach of this Lease including, without limitation, the cost to remove Tenant's personal property from the Premises and to restore the Premises after Tenant surrenders possession thereof.

C.　　(i)　　If Tenant becomes the subject debtor in a case pending under the Bankruptcy Code, Landlord's right to terminate this Lease under this Section shall be subject to the applicable rights (if any) of the Trustee in Bankruptcy to assume or assign this Lease as then provided for in the Bankruptcy Code. However, the Trustee in Bankruptcy must give to Landlord and Landlord must receive proper written notice of the Trustee's assumption or rejection of this Lease within sixty (60) days (or such other applicable period as is provided for in the Bankruptcy Code) after the entry of the Order for Relief; it being agreed that failure of the Trustee to give notice of such assumption hereof within said period shall conclusively and irrevocably constitute the Trustee's rejection of this Lease and waiver of any rights of the Trustee to assume or assign this Lease. The Trustee shall not have the right to assume or assign this Lease unless said Trustee (A) promptly and fully cures all defaults under this Lease, (B) promptly and fully compensates Landlord and any party other than Tenant to the Lease for all monetary damages and any actual pecuniary loss to such party incurred as a result of such default, (C) the Bankruptcy Court (or other court of competent jurisdiction) enters an order authorizing the assumption or assignment, (D) the assumption or assignment is not prohibited under applicable law, including, but not limited to, Section 365 of the Bankruptcy Code, and (E) provides to Landlord "adequate assurance of future performance" (as defined hereinbelow) of the Lease.

　　　　(ii)　　Landlord and Tenant hereby agree in advance that "adequate assurance of future performance", as used in Paragraph C(i)(E) above shall mean that all of the following minimum criteria must be met: (a) Tenant's gross receipts in the ordinary course of its business during the thirty (30) days immediately preceding the initiation of the case under the Bankruptcy Code must be at least ten (10) times greater than the next installment of Base Monthly Rent due under this Lease, (b) both the average and median of Tenant's monthly gross receipts in the ordinary course of its business during the six (6) months

immediately preceding initiation of the case under the Bankruptcy Code must be at least ten (10) times greater than the next installment of Base Monthly Rent due under this Lease, c) Tenant must pay in advance to Landlord all rentals and other sums payable by Tenant hereunder including, but not limited to, its share (as estimated by Landlord) of the cost of all services provided by Landlord (whether directly or through agents or contractors, and whether or not the cost of such services is to be passed through to Tenant), in advance of the performance or provision of such services, (d) Tenant must agree (by writing delivered to Landlord) that Tenant's business shall be conducted in a first class manner, and that no liquidating sales, auctions, or other non-first class business operations shall be conducted on the Premises, and that the use of the Premises as stated in this Lease will remain unchanged, and that the assumption or assignment of this Lease will not violate or adversely affect the rights of other tenants located in the Building; and (e) in the event this Lease is for space within a shopping center, Tenant shall reasonably satisfy any additional requirements imposed under Section 365(b)(3) of the Bankruptcy Code.

(iii)     In the event Tenant is unable to: (A) cure its defaults, (B) reimburse Landlord or any other party to this Lease for its monetary damages or actual pecuniary loss to such party resulting from the defaults, (C) pay the rents due under this Lease or any other payments required of Tenant under this Lease on time, or (D) meet the criteria and obligations imposed by (A) through (D) in the previous Paragraph (c)(ii), then Tenant hereby agrees in advance that it has not met its burden to provide adequate assurance of future performance and therefore cannot assume this Lease, and this Lease may be immediately terminated by Landlord in accordance with Paragraph (b) above.

D.  It is further stipulated and agreed that, notwithstanding any provision herein to the contrary, in the event of the termination of this Lease by the happening of any event described in this Section, Landlord shall forthwith, upon such termination, become entitled to recover as and for the liquidated damages caused by the breach of the provisions of this Lease an amount equal to the difference between the then cash value of the Base Annual Rent reserved hereunder for the unexpired portion of the Lease Term demised, and the then cash rental value of the Premises for such unexpired portion of the Lease Term hereby demised, unless the statute which governs or shall govern the proceedings in which such damages are to be proved limits or shall limit the amount of such claim capable of so being proved, in which case Landlord shall be entitled to prove as and for liquidated damages an amount equal to that allowed by or under any such statute. When calculating damages hereunder, Landlord shall be entitled to recover the amount of any "free rent" or other concessions extended by Landlord and received by Tenant prior to the premature expiration of this Lease, it being agreed by Tenant that such "free rent" and concessions were contingent upon Tenant fulfilling the entire term of this Lease. The provisions of this paragraph of this Lease shall be without prejudice to (i) Landlord's right to prove in full damages for Base Annual Rent and Additional Rent accrued prior to the termination of this Lease, but not paid, or (ii) any rights given to Landlord by any pertinent statute to provide any amounts allowed thereby. In making any such computation, the then cash rental value of the Premises shall be deemed prima facie to be the rental realized upon any reletting, if such reletting can be accomplished by Landlord within a reasonable time after such termination of this Lease, and the then present cash value of the future rents hereunder reserved to Landlord for the unexpired portion of the Lease Term hereby demised shall be deemed to be such sum, if invested at six percent (6%) simple interest, as will produce the future rent over the period of time in question. Landlord and Tenant further agree that in making any computation of damages for Tenant holding over after the termination of this Lease, Landlord may claim damages based on the Base Annual Rent and Additional Rent, provided herein for the period of such hold over since the Base Annual Rent and Additional

Rent, by agreement of the parties, constitutes the fair rental value of the Premises during the hold over period.

35. **Tenant's Option to Terminate.** Tenant shall have the option to terminate the Lease following the expiration of the third Lease Year. Such option shall be exercisable by Tenant by written notice of Tenant's desire to exercise such option given to Landlord not less than six (6) months prior to the effective date of such termination. Should Tenant elect to exercise such option, Tenant shall automatically forfeit the Security Deposit and shall be responsible for all broker's commissions, build-out costs and other expenses incurred by landlord (on an amortized basis) in executing this lease and preparing the space for Tenant's occupancy. Within thirty (30) days after receipt by Landlord of Tenant's termination notice, Landlord shall provide Tenant with an itemization of all such expenses. Tenant shall pay all such expenses to Landlord within fourteen (14) days after receipt of such notice and Tenant's termination notice shall not be deemed effective, and this Lease shall remain in full force and effect, until all such expenses are paid by Tenant to Landlord.

Notwithstanding anything to the contrary contained herein, it shall be a condition precedent to Tenant's right hereunder, that at the time of exercising same, this Lease be in full force and effect and there be no existing and unremedied or waived default on the part of the Tenant to be performed under any of the terms, covenants or conditions of the Lease as to which Landlord shall have served notice upon Tenant and for which the applicable cure or grace period has expired without Tenant having cured the default.

**LANDLORD:**                                    **TENANT:**

**NORTH DEVELOPMENT, LTD.** as agent for the    **AMES TAPING TOOLS SYSTEMS, INC.**
beneficiaries of Landlord

By: _____               By: _____

Printed Name: ___Calvin D. Boender___          Printed Name: ___Charles Whipple___

Its: ___Manager___                             Its: ___President___
            (Title)                                        (Title)

This Lease consists of the Lease Schedule, Pages 1 through 26 hereof, Riders A, B and C, and Exhibits A.

# RIDER A

## RULES AND REGULATIONS

1.    Landlord reserves the right, at Landlord's sole cost and expense, to change from time to time the format of the painted signs or lettering on the signs, and to require replacement of any signs previously approved pursuant to Section 15 to conform to Landlord's new standard sign criteria established pursuant to any remodeling of the Building. Tenant supplied channel letter sign may not be altered without Tenant's approval.

2.    Tenant shall not, without the prior written consent of Landlord (i) paint, decorate or make any changes to the front of the Premises; (ii) install any exterior lighting, awning or protrusions, signs, advertising matter, decoration or painting visible from the exterior of the Premises or any coverings on exterior windows and doors, excepting only dignified displays of customary type; or (iii) install any signs or other displays on exterior windows or within six (6) inches of any exterior window line. If Landlord objects in writing to any of the foregoing, Tenant shall immediately discontinue such use.

3.    Tenant shall not (i) conduct or permit any fire, bankruptcy or auction sale (whether real or fictitious) unless directed by order of a court of competent jurisdiction, or conduct or permit any legitimate or fictitious "Going Out of Business" sale nor represent or advertise that it regularly or customarily sells merchandise at "manufacturer's," "distributor's," "wholesale," "off price," or "warehouse", or similar prices or other than at "retail prices"; (ii) use, or permit to be used, the sidewalks adjacent to such Premises, or any other area outside the Premises for solicitation or for the sale or display of any merchandise or for any other business, occupation or undertaking, or for outdoor public meetings, circus or other entertainment (except for promotion activities in cooperation with the management of the Building); (iii) use or permit to be used any sound broadcasting or amplifying device which can be heard outside of the Premises or any flickering or spot lights; or (iv) use or permit to be used any portion of the Premises for any unlawful purpose or use or permit the use of any portion of the Premises as regular living quarters, sleeping apartments or lodging rooms or for the conduct of any manufacturing business.

4.    Tenant shall at all times keep the Premises at a temperature sufficiently high to prevent freezing of water pipes and fixtures. Tenant shall not, nor shall Tenant at any time permit any occupant of the Premises to: (i) use, operate or maintain the Premises in such manner that any rates for any insurance carried by Landlord, or the occupant of any premises within the Building, shall thereby be increased; or (ii) commit waste, perform any acts or carry on any practices which may injure the Building or be a nuisance or menace to other tenants in the Building.

5.    Tenant shall not obstruct any sidewalks, parking areas, driveways, passages, exits, entrances, truck ways, loading docks, package pick-up stations, pedestrian sidewalk and ramps, first aid and comfort stations, Common Areas or stairways of the Building. No Tenant and no employee or invitee of any Tenant shall go upon the roof of the Building unless authorized by Landlord.

6.    Tenant, upon the termination of its tenancy, shall deliver to Landlord the keys of all doors to the Premises.

7.    If Tenant requires telegraphic, telephonic, burglar alarm or similar service, it shall first obtain and thereafter comply with Landlord's instructions in their installation.

8.    Tenant shall not place a load upon any floor which exceeds the designated load per square foot or the load permitted by law. Landlord shall have the right to prescribe the weight, size and position of all equipment brought into the Premises. Heavy objects shall stand on such platforms as determined by Landlord to be necessary to properly distribute the weight. Business machines and mechanical equipment belonging to

Tenant which cause noise or vibration that may be transmitted to the structure or outside of Tenant's store or to any other space to such a degree as to be objectionable to Landlord or to any tenants, shall be placed and maintained by Tenant, at Tenant's expense, on vibration eliminators or other similar devices. Landlord will not be responsible for loss of, or damage to, any equipment or other property from any cause, and all damage done to the Building by maintaining or moving such equipment or other property shall be repaired at the expense of Tenant.

9.     The toilet rooms, toilets, urinals, wash bowls or other apparatus shall not be used for any purpose other than that for which they were constructed, no foreign substance of any kind whatsoever shall be thrown therein, and the expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the Tenant who, or whose employees or invitees, shall have caused it. Rodding out of the toilets as needed shall be Tenant's responsibility.

10.    Tenant shall not install any radio or television antenna, loudspeaker or other device on the roof or exterior walls of Tenant's store. Tenant shall not interfere with radio or television broadcasting or reception from or in the Building or elsewhere.

11.    Tenant shall not install, maintain or operate upon the Premises or in any Common Areas under the exclusive control of Tenant any vending machine or video game without Landlord's prior written consent.

12.    Tenant shall store all its trash and garbage in containers as designated by Landlord. Tenant shall not place in any trash box or receptacle any material which cannot be disposed of in the ordinary and customary manner of trash and garbage disposal. All garbage and refuse disposal shall be made in accordance with directions issued from time to time by Landlord. Tenant shall pay for and be responsible for daily trash and garbage disposal.

13.    No cooking shall be done or permitted by Tenant on the Premises without Landlord's prior written consent, except for brewing coffee and similar beverages, and use of a single microwave oven by employees only, and in any event, Tenant will not permit odors to emanate from the Premises and ensure that such use is in accordance with all applicable federal, state and city laws, codes, ordinances, rules and regulations.

14.    Tenant shall not use in any space, any hand trucks except those equipped with rubber tires and side guard, or such other material-handling equipment as Landlord may approve. Tenant shall not bring any other vehicles of any kind into the Building, except a rubber-tired electric forklift.

15.    Employees of Landlord shall not perform work or do anything outside of their regular duties unless under special instructions from Landlord.

16.    The delivery or shipping of merchandise, supplies, fixtures and equipment to and from the Premises shall be subject to such rules and regulations as in the judgment of Landlord are necessary for the proper operation of the Building.

17.    Landlord may waive any one or more of these Rules and Regulations for the benefit of any particular tenant or tenants, but no such waiver by Landlord shall be construed as a waiver of such Rules and Regulations in favor of any other tenant or tenants, nor prevent Landlord from thereafter enforcing any such Rules and Regulations against any or all of the tenants of the Building.

18.    In the event the Premises are served by a sprinkler system, all metal shelving located in and about the Premises shall be of a type having open grating, and all wooden shelving located in and about the Premises shall be of an open type, and in any event, all shelving located in and about the Premises shall be of a kind

and nature in conformance with all applicable municipal and governmental laws, ordinances, codes and regulations.

19.      Tenant will at all times during the term of this Lease keep and maintain, at its own cost and expense, in good order, condition and repair, any and all fire safety and prevention devices and equipment as prescribed and required by Landlord, its insurers, and any applicable municipal or governmental law, ordinance or regulation.

20.      These Rules and Regulations are in addition to, and shall not be construed to in any way modify or amend, in whole or in part, the terms, covenants, agreements and conditions of the Lease.

21.      Tenant shall be responsible for the observance of all of the foregoing rules by Tenant's employees, agents, clients, customers, invitees and guests.

22.      Tenant and its employees shall park vehicles in designated parking locations.

3/16/2004

# RIDER B

# WORK LETTER

DATED: March _R_ ___, 2004

TO:    Ames Taping Tools, Inc.
3305 Breckinridge Blvd, Suite 122
Duluth, GA 30096

    Re:    1923 North Elston Building, Chicago, Illinois (the "Premises"), as more particularly described in the certain Lease of even date herewith by and between Tenant and Landlord hereafter defined

Gentlemen:

    Concurrently herewith, you ("Tenant") and the undersigned ("Landlord") are entering into a lease of the Premises (the "Lease"). The defined terms used herein shall have the same meanings as set forth in the Lease. Landlord and Tenant agree that their respective rights and obligations with respect to the construction of the Premises are as follows:

1.    **Landlord's Plans and Work.**

1.01    The Landlord shall construct the following improvements in the Premises:

    (i)    Remove walls as shown on plan;
    (ii)    Install an opening between the office and warehouse of 6'6" in width by 8' in height;
    (iii)    Install Azrock V-789 VCT in the showroom with 4" black vinyl cove base; and
    (iv)    Install slatwall on walls; said slatwall to be provided by Tenant.

1.02    Landlord shall use commercially reasonable efforts to complete such work on or before the Commencement Date but in no event shall Landlord be liable for any costs, expenses, damages or liabilities arising out of failure to complete such items on or before the Commencement Date nor shall such failure constitute a default under this Lease or entitle Tenant to a rent abatement or to otherwise terminate this Lease. Tenant will be allowed to operate business on May 1, 2004 while any remaining work is completed.

1.03    Tenant agrees that title to all work performed in the Premises and materials installed in the Premises shall remain in Landlord, except Tenant shall retain title to all removable trade fixtures installed in the Premises by Tenant, subject however, to the terms of the Lease.

    3/16/2004

**LANDLORD:**

By: _____

Printed Name: Calvin D. Boender

Its: Manager
        (Title)

**TENANT:**

AMES TAPING TOOLS, INC.

By: _____

Printed Name: Charles Whipple

Its: President
        (Title)

# RIDER C

## RENEWAL OPTION

Tenant is hereby granted the option to extend the term of this Lease for one (1) five (5) year option period (the "Renewal Term") upon the same terms and conditions as may then be contained in this Lease, except that the Base Rent for the Renewal Term shall be as follows:

Lease Year 6:

Fifteen and 00/100 Dollars ($15.00) per square foot.

Six Thousand Two Hundred Ninety-three and 75/100 Dollars ($6,293.75) per month.

Seventy-five Thousand Five Hundred Twenty-five and 00/100 Dollars ($75,525.00) per year.

Lease Year 7:

Fifteen and 50/100 Dollars ($15.50) per square foot.

Six Thousand Five Hundred Three and 54/100 Dollars ($6,503.54) per month.

Seventy-eight Thousand Forty-two and 50/100 Dollars ($78,042.50) per year.

Lease Year 8:

Sixteen and 00/100 Dollars ($16.00) per square foot.

Six Thousand Seven Hundred Thirteen and 33/100 Dollars ($6,713.33) per month.

Eighty Thousand Five Hundred Sixty and 00/100 Dollars ($80,560.00) per year.

Lease Year 9:

Sixteen and 50/100 Dollars ($16.50) per square foot.

Six Thousand Nine Hundred Twenty-three and 13/100 Dollars ($6,923.13) per month.

Eighty Three Thousand Seventy-seven and 50/100 Dollars ($83,077.50) per year.

Lease Year 10:

Seventeen and 00/100 ($17.00) per square foot.

Seven Thousand One Hundred Thirty-two and 92/100 Dollars ($7,132.92) per month.

Eighty-five Thousand Five Hundred Ninety-five and 00/100 Dollars ($85,595.00) per year.

3/16/2004

Such option shall be exercisable by Tenant, if at all, by written notice of Tenant's desire to exercise such option given to Landlord not less than one hundred eighty (180) days prior to the expiration of the initial Term of this Lease. Notwithstanding anything to the contrary contained herein, it shall be a condition precedent to Tenant's option right hereunder, that at the time of exercising same, this Lease be in full force and effect and there be no existing and unremedied or waived default on the part of the Tenant to be performed under any of the terms, covenants or conditions of the Lease as to which Landlord shall have served notice upon Tenant and for which the applicable cure or grace period has expired without Tenant having cured the default. Any cancellation or termination of this Lease or Tenant's right to possession of the Premises shall terminate the Option hereunder.



Jim Ridley, Architect
2040 West Chase Avenue, Chicago, Il 60645
773.206.4129        Fax 773.262.4481

1923 N. Elston, Chicago
March 15, 2004

KITCHEN

OFFICE #6

OFFICE #5

OFFICE #1

WOMEN

MEN

RECEPTION

OFFICE #4

OFFICE #3

ENTRY

OFFICE
2,169 SF

OFFICE #2

ADMIN

LOADING DOCK
2,866 SF