

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMES HOLDING CORP., et al.,[1] | ) Case No. 09-14406 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Ref. Docket Nos: 42 & 119 |

## ORDER (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; (B) APPROVING ASSET PURCHASE AGREEMENT; (C) AUTHORIZING ASSUMPTION AND ASSIGNMENT AND REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING OTHER RELIEF

Upon the motion (the "Sale Motion") of the Debtors,[2] pursuant to sections 105(a), 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Sale Order") (a) authorizing the sale (the "Sale") of the Purchased Assets (as defined in the APA) free and clear of all Liens, Claims and Interests (each as defined in the APA (as defined below)) in accordance with such APA to Axia Acquisition Corporation (together with its designees, the "Purchaser"); (b) approving the asset purchase agreement, attached hereto as Exhibit 1, between the Debtors and the Purchaser (the "APA"); (c) authorizing the assumption and assignment of the executory contracts and unexpired leases designated by the Purchaser (collectively, the "Assigned Contracts") to the Purchaser; (d) rejecting certain executory contracts and unexpired leases designated by the Purchaser (collectively, the "Rejected

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Ames Holding Corp. (6130), Axia Incorporated (5251), TapeTech Tool Co., Inc. (7106), and Ames Taping Tool Systems, Inc. (6440).

[2] Capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Sale Motion.

Contracts"); and (e) granting certain related relief, all as more fully set forth in the Sale Motion; the Court having entered an order dated January 13, 2010 (the "<u>Bid Procedures Order</u>," and attached as <u>Exhibit 1</u> thereto, the "<u>Bid Procedures</u>") approving the Bid Procedures, scheduling an Auction and Sale Hearing, approving the form and manner of notice of the Sale Notice and Executory Contract Notice (each as defined in the Bid Procedures Order) and establishing procedures relating to the assumption and assignment of certain contracts; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing and any such objections having been overruled, resolved or withdrawn, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore, **IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT**:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction over the Sale Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

D.    Good and sufficient notice of the Sale Hearing and Sale Motion and the relief sought therein has been given to all interested persons and entities, including, without limitation, (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) the 20 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; (iv) all taxing authorities having jurisdiction over any of the Purchased Assets; (v) counsel to the Purchaser; (vi) all parties who are known to possess or assert a secured claim against the Purchased Assets; (vii) all contract and lease counterparties; (viii) all parties known or reasonably believed to have expressed an interest in the Purchased Assets; (ix) the Securities and Exchange Commission; (x) all parties to any pension plan maintained, sponsored or contributed to by any of the Debtors; (xi) all other creditors of the Debtors (whether liquidated, contingent or unmatured) other than the creditors specifically excluded from such service, as agreed by the Debtors and Purchaser; (xii) all parties to any governmental approvals or permits; (xiii) any applicable state environmental agency; and (xiv) all parties who have filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002.

E.    A sound business purpose justifies the Sale of the Purchased Assets outside of the ordinary course of business.

F.    The Bid Procedures set forth in the Bid Procedures Order were non-collusive and substantively and procedurally fair to all parties.

G.     The Debtors complied with the Bid Procedures and the Bid Procedures Order and the Debtors' publication of a notice in substantially the form of the Sale Notice in the Wall Street Journal on January 20, 2010, provided sufficient notice of the Sale.

H.     The Debtors solicited offers for, scheduled an auction of, and selected the Successful Bidder (as defined in the Bid Procedures) for the Sale of the Purchased Assets in accordance with the Bid Procedures Order.   The Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as Qualified Bidders (as defined in the Bid Procedures) and submit their highest or otherwise best offer to purchase the Purchased Assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets and (iii) considered any bids submitted on or before the bid deadline.

I.     No Qualified Bids (as defined in the Bid Procedures) other than the Purchaser's bid pursuant to the APA were submitted.   Accordingly, no Auction (as defined in the Bid Procedures) was held.

J.     The consideration to be provided by the Purchaser pursuant to the APA: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)) or any similar laws of any state or other jurisdiction whose law is applicable to the contemplated transactions; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other available alternative.   In reaching this determination, the Court has taken into account both the consideration to be realized directly

by the Debtors, including the assumption of claims against the Debtors' estates, and the indirect benefits of such Sale for the Debtors' employees and the Debtors' vendors and suppliers.

K.     Entry into the APA and consummation of the transactions contemplated thereby constitute the exercise of the Debtors' sound business judgment and fiduciary duties and such acts are in the best interests of the Debtors, their creditors and estates.

L.     The transactions contemplated by the APA are undertaken by the Debtors and the Purchaser at arms' length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such, is entitled to all of the protections afforded thereby and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser in no way induced or caused the chapter 11 filing of the Debtors; (c) the Purchaser made the highest and/or otherwise best bid for the Purchased Assets; (d) all payments to be made to the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the transactions have been disclosed; and (e) the negotiation and execution of the APA and any other agreements or instruments related thereto was in good faith and an arms' length transaction between the Purchaser and the Debtors.

M.     The Debtors and the Purchaser have not engaged in any conduct that would permit the APA or the Sale to be avoided under Section 363(n) of the Bankruptcy Code.

N.     The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

O.  The sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan.

P.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title and interest in, to and under the Purchased Assets to transfer and convey the Purchased Assets as contemplated by the APA.

Q.  Except as permitted under the express terms of the APA, the consummation of the Sale pursuant to the APA will be a legal, valid and effective Sale of the Purchased Assets and will vest the Purchaser (and its designees or assignees, as applicable) with all right, title and interest in and to the Purchased Assets free and clear of all Liens, Claims and Interests, except for the Assumed Liabilities (as defined in the APA), including, but not limited to, any such Liens, Claims and Interests (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors', the Debtors' estates or the Purchaser's interest in the Purchased Assets, or any similar rights, or (ii) relating to taxes or any other liabilities, arising under or out of, in connection with, or in any way relating to, the Purchased Assets, the Debtors, the Debtors' estates or their respective operations or activities through the Closing Date.

R.  A sale of the Purchased Assets other than one free and clear of Liens, Claims and Interests (other than the Assumed Liabilities) would be of substantially less benefit to and would adversely affect the Debtors' bankruptcy estates.

S.      With respect to all parties asserting Liens, Claims and Interests (other than Assumed Liabilities) in, to, or against the Purchased Assets, the Sale complies with all the requirements of section 363(f) of the Bankruptcy Code. With respect to each such interest in the Purchased Assets: (a) applicable non-bankruptcy law permits the sale free and clear of such interest; (b) the holder of such interest consents to the Sale free and clear of its interest; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the Purchased Assets; (d) such interest is in bona fide dispute; or (e) the holder of such interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

T.      All parties with Liens, Claims and Interests (other than Assumed Liabilities) against the Purchased Assets identified to be sold under the APA, if any, who did not object to the Sale Motion and the relief requested therein, or who withdrew their objections to the Sale Motion, are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code; and all parties with Liens, Claims and Interests (other than Assumed Liabilities) against the Purchased Assets who objected to the Sale Motion, but who did not withdraw any such objection, (a) fall within one or more of the subsections of 363(f) and are adequately protected by having their Liens, Claims and/or Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order and priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto, and (b) in each case, are enjoined from taking any action against the Purchased Assets, the Purchaser, its affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtors, or any of their respective affiliates.

U.    The Sale and related transactions are not and do not amount to a consolidation, merger or *de facto* merger of the Purchaser and any of the Debtors and/or any of the Debtors' estates, there is not substantial continuity between the Purchaser and any of the Debtors, there is no significant common identity between the Purchaser and any of the Debtors, there is no continuity of enterprise between the Purchaser and any of the Debtors, the Purchaser is not a mere continuation of any of the Debtors or any of their estates and the Purchaser does not constitute a successor to any of the Debtors or any of their estates with respect to any and all claims, including federal or state tax claims, and multi-employer pension plan claims or other pension.

V.    By virtue of the APA or otherwise, the Purchaser will not acquire any liabilities of the Debtors, other than the Assumed Liabilities as set forth in the APA.

W.    Without limiting the generality of the foregoing, other than the Assumed Liabilities, the Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the Sale of the Purchased Assets to the Purchaser and the assignment of the Assigned Contracts to the Purchaser were not free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, other than the Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for the Excluded Liabilities (as defined in the APA).

X.    Good and sufficient notice of the possible transfer, assumption and assignment of the Assigned Contracts has been given to all non-debtor parties to the Assigned Contracts and no other or further notice is required. A reasonable opportunity to object or be heard has been offered to parties in interest.

Y.     The Assigned Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms.

Z.     With respect to each of the Assigned Contracts, the Debtors have met the requirements of section 365(b) of the Bankruptcy Code

AA.     The Determined Cure Costs (as defined in the APA) are deemed to be amounts necessary to "cure" (within the meaning of Section 365(b)(1) of the Bankruptcy Code) all "defaults" (within the meaning of Section 365(b) of the Bankruptcy Code) under such Assigned Contracts to the extent required by Section 365 of the Bankruptcy Code.

BB.     The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

CC.     The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.  Failure to object to the assumption and assignment of an Assigned Contract is deemed consent to the assumption and assignment.

DD.     The assumption and assignment of the Assigned Contracts as set forth in the APA is integral to the APA and is in the best interests of the Debtors, their creditors and estates and other parties-in-interest, and represents the exercise of sound and prudent business judgment by the Debtors.

EE.     The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

FF.     Upon entry of this Sale Order, the Debtors shall have full power and authority to consummate the Sale contemplated by the APA.  The APA and the Sale have been duly and validly authorized by all necessary action of the Debtors and no shareholder vote, board

resolution or other corporate action is required of Debtors for Debtors to consummate such Sale or the other transactions contemplated in the APA.

GG.    Cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004 and 6006.

HH.    The entry of this Sale Order is in the best interests of the Debtors, their creditors and estates and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Sale Motion, the APA and the transactions contemplated thereby shall be, and hereby are, granted and approved in all respects as modified by this Sale Order.

2.    All objections, responses and requests for continuance concerning the Motion are resolved in accordance with the terms of this Sale Order as set forth in the record of the Sale Hearing.   To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied with prejudice.

3.    Notice of the Auction and the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 104(1) and Bankruptcy Rules 2002 and 6004. The Sale Motion or notice thereof shall be deemed to provide sufficient notice of the Sale free and clear of Liens, Claims and Interests in accordance with Local Rule 6004-1.

4.    The Debtors are authorized and directed to close, consummate and comply with the APA and all other agreements and documents related to and contemplated thereby (collectively, the "Sale Documents"), which Sale Documents hereby are authorized and approved in all respects and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Sale pursuant to the terms of the APA.

5.     The terms and provisions of this Order shall be binding in all respects upon the Purchaser and the Debtors, their estates and any trustees thereof, and all creditors and shareholders of the Debtors, all interested parties and their respective successors and assigns, including, but not limited to, any creditor asserting a Lien, Claim and/or Interest in the Purchased Assets.

6.     The Purchaser's offer for the Purchased Assets, as embodied in the APA, is the highest or otherwise best offer for the Purchased Assets and is hereby approved.

7.     Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Sale by the Debtors to the Purchaser of the Purchased Assets and the transactions related thereto, upon the Closing under the APA, are authorized and approved in all respects.

8.     Subject to the payment or delivery by the Purchaser of the consideration provided for in the APA pursuant to sections 363 and 365(a) of the Bankruptcy Code, the Sale of the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title and interest of Debtors in and to the Purchased Assets free and clear of all Liens, Claims and Interests (except the Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code, effective as of the Closing Date.

9.     The Purchaser will not acquire any liabilities of the Debtors, other than the Assumed Liabilities set forth in the APA. Upon this Order becoming a Final Order (as defined in the APA), the definition of "Assumed Liabilities" shall be deemed amended to include certain of the Debtors' prepetition unsecured claims, without duplication, as follows: (a) unpaid administrative expenses pursuant to Section 503(b)(9) of the Bankruptcy Code, in an aggregate amount not to exceed $20,000 (the "503(b)(9) Claims"), (b) claims in the aggregate amount up to

$150,000 with respect to claims of general unsecured creditors (excluding claims arising under leases of non-residential real property (including rejection claims), other claims arising from rejection of executory contracts, claims of "insiders", "affiliates" (as each term is defined in the Bankruptcy Code), affiliates of insiders, or unsecured claims, if any, of the Administrative Agent and the Lenders (as each term is defined in the Existing Credit Agreement)) (the "Group A Claims") and (c) claims in the aggregate amount of $100,000 arising under leases of non-residential real property (including rejection claims) and other claims arising from rejection of executory contracts (excluding Group A Claims, claims of "insiders", "affiliates" (as each term is defined in the Bankruptcy Code), affiliates of insiders, or unsecured claims, if any, of the Administrative Agent and the Lenders) (collectively, the "Group B Claims"); such claims, in each case, as set forth on a schedule to be prepared by the Debtors, in consultation with the Creditors' Committee, and provided to the Purchaser as follows: (i) on or before the date that is 60 days after the Closing Date with respect to the schedules of the 503(b)(9) Claims and Group A Claims and (ii) on or before the date that is 60 days after the expiration of the Contract Option Period (defined below) with respect to the schedule of Group B Claims. The schedules delivered to the Purchaser in accordance with this paragraph shall be conclusive and the Debtors shall have no liability to Purchaser, any creditor or any other interested party for any errors or omissions in the preparation of any such schedules other than for knowing and intentional misrepresentations in the preparation of such schedules. Purchaser shall be entitled to rely on the finality of such schedules and shall have no liability for making payments to the holders of the Group A Claims and the Group B Claims based upon such schedules. In addition, (1) as of the date that is 60 days after the Closing Date with respect to the original holders of Group A Claims (other than Group A Claims consisting of trade creditor claims) and 90 days after the Closing Date with

respect to the original holders of Group B Claims, the Purchaser shall be deemed to have directed the Debtors to waive preference actions against such parties in accordance with Section 5.16 of the APA, and (2) as of the date that is 180 days after the Closing Date, Purchaser shall be deemed to have directed the Debtors to waive preference actions against the original holders of Group A Claims consisting of trade creditor claims in accordance with Section 5.16 of the APA; provided, however, that Purchaser shall have no obligation to pay any Group A Claim consisting of a trade creditor claim or cause the waiver of preference actions against the original holder of such claim unless, at Purchaser's request, such creditor has agreed in writing to provide Purchaser with industry standard trade credit terms (no less favorable to Purchaser than 2%/net 30, net 60 and otherwise on customary pricing and industry standard terms). The 503(b)(9) Claims, the Group A Claims and the Group B Claims shall be made or directed by Purchaser not later than 180 days after the Closing Date and shall be paid to the creditors listed on the schedules provided by the Debtors to Purchaser as described above.

10. Group A Claims and Group B Claims shall exclude critical vendor, wage and tax claims authorized to be paid by prior orders of this Court. To the extent such amounts are provided for in the Budget (as defined in the APA), the Debtors shall, to the extent of available cash, cause such amounts to be paid or otherwise satisfied on or prior to the Closing Date.

11. To the extent that the Debtors' 2009 and 2010 (stub period) tax returns are not completed prior to the Closing Date and costs of preparing such tax returns are not paid pursuant to the Cash Collateral Order, Purchaser shall pay or reimburse the Debtors for the costs of a third party tax professional reasonably acceptable to Purchaser and the Debtors.

12. At Closing, Purchaser shall remit payment to Fairfax County, pursuant to wire instructions provided by Fairfax County prior to the Closing Date, in an amount equal to

$2,546.10, which shall constitute full and final payment any and all amounts owing by the Debtors for 2008 and 2009 business personal property taxes. In addition, Purchaser shall assume the Fairfax County 2010 business personal property taxes of the Debtors and pay such taxes as and when they become due and payable.

13.     Upon the Closing Date, and in accordance with the APA, the Purchase Price shall be paid as set forth in Section 2.4 of the APA, including (a) the issuance by Purchaser of Term Notes A and Term Notes B in the aggregate principal amount of $18,000,000 (the "Notes") to the Existing Senior Term Lenders, and (b) the issuance by the parent entity of Purchaser ("Holdings"), of 21.5% of the equity of Holdings (the "Equity") to the Existing Senior Term Lenders receiving Term Note B. The Purchase Price consisting of the Notes and the Equity shall be allocated in accordance with the terms of the Restructuring Agreement, and shall satisfy a portion of the Senior Secured Obligations (as defined in the Existing Credit Agreement) as determined in accordance with the Existing Credit Agreement and applicable law. Delivery to an Existing Senior Term Lender of its allocated share of the Notes and Equity, in its record name and at its record address under the Existing Credit Agreement (or at such other name and address as such Existing Senior Term Lender may specify in writing to the Administrative Agent, with copies to the Purchaser and the administrative agent under the Notes (the "Exit Facility Agent"), on or before February 24, 2010), shall be deemed to bind such Existing Senior Term Lender to the terms and conditions of the applicable documentation relating to the Notes (including, without limitation, any indemnification obligations of such Existing Senior Term Lender set forth in the Notes, the credit agreement pursuant to which the Notes are issued and any related documentation) and, to the extent such Existing Senior Term Lender is receiving Equity, to the applicable documentation relating to the Equity (including, without limitation, the Stockholders'

Agreement of Holdings). Promptly following entry of this Order, the Administrative Agent shall provide a copy of the register under the Existing Credit Facility to the Purchaser and the Exit Facility Agent, by and through their respective counsel, and, thereafter, through Closing, shall timely notify the Purchaser and the Exit Facility Agent, by and through their respective counsel, in writing of any changes to such register. Any fee owing to Barrier Advisors, Inc. on account of the Closing of the Sale shall be paid by the Debtors in accordance with the Orders of this Court.

14.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser as of the Closing Date. Pursuant to Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of the chapter 11 cases or the consummation of the transaction contemplated by the APA.

15.     Pursuant to Section 363(f) of the Bankruptcy Code, the Sale of the Purchased Assets shall be free and clear of all Liens, Claims and Interests and all liabilities of Debtors whether known or unknown, other than the Assumed Liabilities (including the Determined Cure Costs), including, but not limited to, Liens, Claims and Interests asserted by any of the Debtors' creditors, vendors, suppliers, employees, executory contract counterparties, governmental units or lessors. The Purchaser shall not be liable in any way (as successor entity or otherwise) for any claims that any of the foregoing parties or any other third party may have against the Debtors, other than the Assumed Liabilities. Any and all valid and enforceable Liens, Claims and

Interests on, against or in the Purchased Assets, other than the Assumed Liabilities, shall be transferred, affixed and attached to the net proceeds of the Sale with the same validity, priority, force and effect such Liens, Claims and Interests had on the Purchased Assets immediately prior to the Sale and subject to the rights, claims, defenses and objections, if any, of the Debtors and all interested parties with respect to any such asserted Liens, Claims and Interests. The Sale of the Purchased Assets to the Purchaser shall vest the Purchaser with all the right, title and interest of the Debtors to the Purchased Assets free and clear of Liens, Claims and Interests, other than the Assumed Liabilities.

16. Nothing in this Order or the APA releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under Environmental Laws or related regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under Environmental Laws or related regulations for penalties for days in violation prior to entry of this Order. Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law. Likewise, nothing contained in this Order or in the APA shall in any way (i) diminish the obligation of the Purchaser to comply with Environmental Laws or (ii) diminish the obligations of the Debtors to comply with Environmental Laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing in this Order or the APA authorizes the transfer to the Purchaser of any license, permit, registration, or governmental authorization or approval without the Purchaser's compliance with all applicable legal

requirements under non-bankruptcy law governing such transfers, except to the extent otherwise authorized by such applicable law.

17.     The Purchaser has not assumed or otherwise become obligated for any of the Debtors' liabilities other than the Assumed Liabilities, and the Purchaser has not purchased any of the "Excluded Assets" as defined in Section 2.1(b) of the APA.

18.     Except for the Assumed Liabilities, pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, the Debtors' affiliates, all Senior Term Lenders and Subordinated Term Lenders (as each term is defined in the Existing Credit Agreement) all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to, beneficiaries under, sponsors of or contributors to any benefit plan, trade and other creditors asserting or holding any Liens, Claims and Interests, in or with respect to the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the closing date under the APA or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liens, Claims and Interests against the Purchaser or any affiliate, successor or assign thereof and each of their respective current and former shareholders, members, officers, directors, managed funds, investment advisors, financial advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Purchased Assets, including claims under section 365(n) of the Bankruptcy Code against the Purchaser with respect to the Purchased Assets.

19.     Except as otherwise expressly provided in the APA, the Purchaser shall have no liability for and no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment with respect to employees or former employees of the Debtors.  Except as otherwise expressly provided in the APA, the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which the Debtors are a party and relating to the Purchased Assets (including, without limitation, arising from or related to the rejection or other termination of any such agreement) and the Purchaser shall in no way be deemed a party to or assignee of such agreement and except for Assumed Liabilities, all parties to any such agreement are hereby enjoined from asserting against the Purchaser any and all Claims arising from or relating to such agreement.  Except for the Assumed Liabilities, the Purchaser shall not acquire or assume, and shall have no liability or obligation for any liabilities of the Debtors, as a successor in interest, successor-in-title or otherwise, including, without limitation any liability for any remedies sought by any Person under the WARN Act or similar state statute or ERISA or any liability with respect to COBRA Coverage for employees or consultants of the Debtors terminated prior to or as part of the consummation of the transaction set forth in the APA with regard to any conduct by the Debtors occurring prior to the Closing Date or any other liability to, arising out of or related to the Excluded Assets, in each case whether arising prior to or after the Closing Date.

20.     If any Person that has filed any financing statement, mortgage, mechanic's lien, *lis pendens* or other document or instrument evidencing liens with respect to any of the Purchased Assets shall have failed to deliver to the Debtors and the Purchaser prior to the

Closing of the APA, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of all Liens, Claims and Interests which such Person has with respect to the Purchased Assets, then (a) the Debtors are authorized to execute and file such statements, instruments, releases and other documents on behalf of such Person and (b) the Purchaser is authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and Interests in the Purchased Assets as of the Closing of the Purchase Agreement, in each case, other than the Assumed Liabilities.

21.     This Sale Order (a) is and shall be effective as a determination that, upon Closing, other than the Assumed Liabilities, any and all Liens, Claims and Interests existing as to the Purchased Assets conveyed to the Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other Persons who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to the Purchaser.

22.     The provisions of this Sale Order authorizing the sale of the Purchased Assets free and clear of Liens, Claims and Interests, other than the Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments to effectuate, consummate

and implement the provisions of this Sale Order. However, the Debtors and the Purchaser, and each of their respective officers, employees and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order.

23.     Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Sale Order.

24.     Other than with respect to the Assumed Liabilities, after the date of Closing of the APA, no Person, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect liens or a security interest against any of the Purchased Assets on account of, or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax (or other amount alleged to be owing by Debtors) (i) for any period commencing before and concluding prior to or on the Closing Date or (ii) assessed prior to and payable after the Closing.

25.     This Sale Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons or entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report to or insure title or state of title in or to any of the Purchased Assets.

26.     Other than as to the Assumed Liabilities, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, all "persons" (as that term is defined in section 101(41) of the

Bankruptcy Code) are hereby enjoined from taking any action against the Purchaser, the Purchaser's affiliates or the Purchased Assets to recover any claim which such "person" has against the Debtors or the Debtors' affiliates. In furtherance of the foregoing, the Senior Term Lenders and the Subordinated Term Lenders, respectively, shall be deemed to have consented to the sale of the Purchased Assets to Purchaser and no Senior Term Lender or Subordinated Term Lender shall have any claim against any Senior Term Lender or Subordinated Term Lender or any direct or indirect equity holder of Purchaser as a result of the transfer of the Purchased Assets to Purchaser as authorized hereby.

27. The transactions contemplated under the APA and the Sale Documents do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates and the Purchaser does not constitute a successor to the Debtors or their estates. Other than the Assumed Liabilities, the Purchaser shall not assume, nor be deemed to assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor or transferee liability, liability or responsibility for any claim against the Debtors or against any insider of the Debtors or similar liability. The Sale Motion and notice thereof contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Neither the purchase of the Purchased Assets by the Purchaser, nor the fact that the Purchaser or its affiliates are using any Purchased Assets previously used by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' business with respect to (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental,

or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan maintained, sponsored or contributed to by the Debtors (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans), (v) the cessation of the Debtor's operations, dismissal of employees or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, or (vi) the other Excluded Liabilities.

28.     All Persons who are presently, or at the Closing of the APA will be, in possession of any of the Purchased Assets conveyed to the Purchaser hereunder are hereby directed to surrender possession of such Purchased Assets to the Purchaser at the Closing or such other period provided by the APA. For the avoidance of doubt, at the Closing, the Debtors and the Administrative Agent shall turn over to the Purchaser all of the ~~Debtors' funds~~ property of the estates of the Debtors in any deposit account (each a "Deposit Account") maintained by any of the Debtors that is in any Debtor's or the Administrative Agent's possession or control (except for funds that the Debtors are authorized to retain and use in accordance with the APA and the Carve-Out in the Cash Collateral Order), and the Administrative Agent shall also deliver such notice(s) to the respective depository bank (each a "Depository Bank") as may be necessary to terminate the deposit

account control agreement with respect to such Deposit Account. All cash and cash equivalents subsequently deposited into any of the Deposit Accounts, and any cash and cash equivalents subsequently received by the Administrative Agent from a Depository Bank in respect of amounts that were deposited into a Deposit Account, shall be promptly remitted to the Purchaser.

29. Any landlord under any nonresidential lease of real property in the possession or occupancy of the Debtors as of the Closing Date shall not interfere with the Purchaser's right to take possession of any Purchased Assets at any leased premises whether or not the term of such premises has expired prior to the Closing Date; and that Purchaser shall have the right to occupy such premises for the period from and after the Closing Date until the earlier to occur of the date that is sixty (60) days after the Closing Date and the date the Purchaser removes all material Purchased Assets from the Premises, so long as the Purchaser pays the applicable Debtor a per diem rent equal to the amount that the Debtor would otherwise be obligated to pay under such lease in accordance with applicable law and any other administrative liability that accrues in accordance with the APA after the Closing Date.

30. From and after the date of the entry of this Sale Order, all persons and entities, including, but not limited to, the Debtors or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transfer of the Purchased Assets to the Purchaser in accordance with the terms of this Sale Order.

31. Pursuant to Section 365 of the Bankruptcy Code, the Debtors are authorized to assume and assign the Assigned Contracts to the Purchaser upon written direction from the Purchaser as set forth herein and in Section 5.1 of the APA.

32. In accordance with Section 5.1 of the APA, the Purchaser shall have a period of 30 days from the Closing Date (the "Contract Option Period") to designate, by written notice to

the Debtors, (a) which of the Potentially Assigned Contracts are to be treated as Rejected Contracts (such notice, the "Rejection Notice") and (b) which of the Potentially Assigned Contracts are to be treated as Assigned Contracts (such notice, the "Assumption Notice"). In the event that a Potentially Assigned Contract is subject to a Rejection Notice, the counterparty will receive an appropriate notice. In the event that a Potentially Assigned Contract is subject to an Assumption Notice, the Debtors will send the applicable counterparty a notice of assumption and assignment of such contract (the "Post-Closing Assumption Notice") which will provide the counterparty with an opportunity to object to the proposed adequate assurance of future performance. In the event that the counterparty does not object to the Post-Closing Assumption Notice within 10 days following service of same, such Potentially Assigned Contract will be deemed an Assigned Contract. In the event that a counterparty objects to the Post-Closing Assumption Notice, the Debtors will request a hearing, the sole issue at which will be the proposed adequate assurance of future performance.

33.     At all times (x) with respect to any Potentially Assigned Contract with respect to which a Rejection Notice is timely delivered, from the Closing until the date on which Purchaser delivers a Rejection Notice with respect to such Potentially Assigned Contract or (y) with respect to all other Potentially Assigned Contracts, from and after the Closing, Purchaser shall pay and be solely responsible for all liabilities and obligations accruing during such period under Potentially Assigned Contracts to the extent such liabilities and obligations first arise on or after the Closing Date and would otherwise constitute chapter 11 administrative expenses, and Purchaser shall be entitled to the benefits accruing under such Potentially Assigned Contracts during such period; provided that such performance by Purchaser shall not be deemed to be an explicit or implicit assumption by Purchaser of any Executory Contract.

34.     Upon assumption and assignment, the Purchaser and the Debtors shall make provision for the payment of the cure amounts to the counterparties of any such Assigned Contracts in the amounts (the "Cure Amounts") set forth in Exhibit 2 to this Sale Order (the "Cure Schedule").  Except as set forth herein, the Cure Amounts set forth in the Cure Schedule shall be deemed the entire cure obligation of the Debtors due and owing under section 365 of the Bankruptcy Code.  Inclusion of any document on Exhibit 2 shall not constitute or be deemed a determination or admission by the Debtors or the Purchaser that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankrupty Code, and all rights will respect thereto are expressly reserved.  Any non-debtor party to an Assigned Contract is barred, enjoined and prohibited from asserting any claim against the Debtors or their property or estates other than the Cure Amount with respect to such Assigned Contract or from offsetting, seeking to offset, recoup, deduct or set-off any claims such party may have against the Debtors from any amounts that may be or may become due in the future to the Purchaser under such Assigned Contract.

35.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' or the Purchaser's right to enforce every term and condition of the Assigned Contracts.

36.     The Purchaser has demonstrated adequate assurance of future performance with respect to all Assigned Contracts.  The proposed assumption and assignment of the Assigned Contracts satisfies the requirements of the Bankruptcy Code including, *inter alia*, sections 365(b)(1) and (3) and 365(f) of the Bankruptcy Code to the extent applicable.

37.     All parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser, the Purchaser's affiliates, the Purchased Assets, or the Debtors any assignment fee, default or breach under or any claim or pecuniary loss or condition to assignment, arising under or related to, the Assigned Contracts existing as of the Closing or arising by reason of the Closing.

38.     The Assigned Contracts, upon assignment to the Purchaser, shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability thereunder.

39.     Any provision in any Assigned Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable and is hereby nullified with respect to the sale and assignments authorized by this Sale Order, and all Assigned Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amounts, if any. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges or other financial accommodations in favor of the non-debtor third party to the Assigned Contracts or restrict use of the premises which are demised by an Assigned Contract to a specific named tenant or business shall have any force and effect with respect to the sale and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy Code.

40.     Any party having the right to consent to the assumption and assignment of an Assigned Contract that failed to object to such assumption and assignment is deemed to have

consented to such assumption and assignment as required by Section 365(c) of the Bankruptcy Code. The Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

41.    Upon assignment, the Purchaser, its successors and assigns shall have the express right to exercise any and all unexercised extension options, renewal options and/or non-disturbance rights or protections, notwithstanding any language in the Assigned Contracts making the exercise of such rights personal to any party or limiting the exercise of such rights only to an assignee who is an affiliate of the original named party under such Assigned Contract or an entity that acquires all or substantially all of the assets of the original named party to such Assigned Contract. Upon assignment, the Purchaser shall exercise said rights consistent with the terms of any such Assigned Contract.

42.    Counterparties to executory contracts and unexpired leases shall be required to file a rejection damages claim, if any, within 30 days after the date on which the Debtors send such party a notice of rejection.

43.    The Purchaser is a good faith purchaser entitled to the benefits and protections afforded by Section 363(m) of the Bankruptcy Code (including with respect to the transfer of the Assigned Contracts assigned as part of the Sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Sale Order); accordingly, the reversal, modification on appeal or vacatur by subsequent order of the Court of the authorization provided herein to consummate the Sale of the Purchased Assets shall not affect the validity of the Sale of the Purchased Assets to the Purchaser (including with respect to the transfer of the Assigned Contracts assigned as part

of the Sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Sale Order).

44.     The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)) or any similar laws of any state or other jurisdiction whose law is applicable to the contemplated transactions, and any other applicable law, and the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

45.     With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be sufficient evidence of the transfer of title to the Purchaser, and the Sale consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including, without limitation, all foreign affiliates and foreign receivers, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state and federal, state and local officials, and each of such persons and entities is hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

46.     This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the APA, the Bid Procedures Order and this Sale Order in all respects and further

to hear and determine any and all disputes between the Debtors and/or the Purchaser, as the case may be, and any non-debtors party to, among other things, any Assigned Contracts; *provided, however,* that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA, the Bid Procedures Order and this Sale Order, such abstention, refusal or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

47.    The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

48.    From and after the date hereof, each Debtor and the Purchaser shall act in accordance with the terms of the APA and each Debtor and the Purchaser, to the extent it already has not done so, shall execute any Sale Document at or prior to Closing.

49.    The failure specifically to include any particular provisions of the APA, the Sale Documents or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the APA, the Sale Documents and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with the Sale Order prior to Closing.

50.    To the extent of any inconsistency between the provisions of this Sale Order and the APA, or any documents executed in connection therewith (including, without limitation, the

Restructuring Agreement (as defined in the APA)), the provisions contained in this Sale Order shall govern and control.

51.     The provisions of this Sale Order are nonseverable and mutually dependent.

52.     This Sale Order shall inure to the benefit of the Purchaser, the Debtors and their respective successors and assigns, including, but not limited to, any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' cases and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these cases or any other or further case involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

53.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order; provided, however, that, notwithstanding anything to the contrary herein or in the APA, nothing in this Order or in the APA approved hereby is intended or shall be deemed to override or in any way modify the Carve-Out under the Cash Collateral Order.  The provisions of this Sale Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any chapter 11 plan of the Debtors, converting the Debtors' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code or dismissing the Debtors' Chapter 11 Cases.

54.     The transactions contemplated by the APA shall be exempt from any so-called "bulk-sale" law in all necessary jurisdictions arising as a result of or in connection with the Debtors' Sale and transfer of the Purchased Assets to the Purchaser.

55. The Debtors shall not transfer to the Purchaser "personally identifiable information" as such term is defined in section 101(41A) of the Bankruptcy Code, if such transfer violates a disclosed privacy policy described in Bankruptcy Code Section 363(b).

56. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

57. This Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of (i) orders authorizing the sale, use or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h); (ii) orders authorizing the assignment of an executory contract or unexpired lease, as set forth in Bankruptcy Rule 6006(d); and (iii) proceedings to enforce a judgment, as set forth in Bankruptcy Rule 7062, or otherwise shall not apply to this Sale Order.

58. The Debtors are authorized to close the Sale immediately upon entry of this Sale Order.

Dated: _____2/17_____, 2010
     Wilmington, Delaware          UNITED STATES BANKRUPTCY JUDGE